**John A. MOSIER, Petitioner-Appellant,**

v.

**A.I. MURPHY, Warden,
Respondent-Appellee.**

No. 84–2106.

United States Court of Appeals,
Tenth Circuit.

May 5, 1986.

Steve Soltis, Asst. Federal Public Defender, Oklahoma City, Okl., for petitioner-appellant.

Michael William Elliott, Asst. Atty. Gen. (Michael C. Turpen, Atty. Gen., with him on brief), Oklahoma City, Okl., for respondent-appellee.

Before SEYMOUR, SETH and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from the district court's denial of appellant John Mosier's petition for post-conviction relief filed pursuant to 28 U.S.C. § 2254. Petitioner's habeas corpus claim states essentially that his guilty plea to first-degree murder charges was the product of ineffective assistance of counsel due to his attorney's conflict of interest at the time of the plea. Mr. Mosier pled guilty to first-degree murder in the District Court of Mayes County, Oklahoma and after exhausting his state post-conviction remedies he filed this petition in the United States District Court for the Northern District of Oklahoma. The United States District Court adopted the Magistrate's findings and recommendation that Mr. Mosier's petition be denied. In his appeal petitioner advances his claimed denial of effective assistance of counsel at the time of the plea due to his attorney's conflict of interest.

Mr. Mosier was charged in Mayes County, Oklahoma with first-degree murder, and his wife Denise was also charged with conspiracy to commit murder. Wanda Cable, his mother-in-law, was similarly charged in Orange County, Texas. The Mosiers had retained attorney George Farrar as their defense counsel and Wanda Cable had also retained Farrar to represent her in the Texas proceeding. With charges still pending against Mrs. Mosier and Wanda Cable

the prosecution proceeded to trial against John Mosier separately seeking the death penalty for his part in the murder. After a one week trial during which both sides called a number of witnesses and with the jury in recess prior to final instructions, the trial judge initiated a plea arrangement by expressing his opinion that the District Attorney would never get the death penalty from the evidence presented. Negotiations started and the District Attorney took the position that he would not accept anything less from the defendant than life. A plea bargain was eventually reached which required petitioner to plead guilty to first-degree murder and receive a life sentence, and in return the state would refrain from seeking the death penalty and also dismiss all filed charges and agree not to proceed further against Denise Mosier and Wanda Cable.

By way of presenting the plea bargain to Mr. Mosier, attorney Farrar told him that, "I don't think this jury will ever give you the death penalty so you are looking at life in prison whether you plead guilty or whether the jury convicts you." The attorney also told the petitioner that by entering a plea of guilty he would be waiving the opportunity to appeal any errors which might have taken place in the trial and in the motion hearings before the trial. Relative to this warning, defendant was told by his attorney that he thought "there was at least a fair chance of reversing a jury verdict on the case" and that the attorney was prepared to pursue an appeal. Defendant discussed the plea proposal with his wife and mother-in-law. Of this he stated that "[he] laid it out for them and it was still [his] decision, it was back up to [him] and of course they wasn't [sic] too happy about it, but it was just kind of a case that you have to make up your mind what you are going to do." He entered his plea the same afternoon and the court accepted it after asking several questions of the petitioner. In response, Mr. Mosier affirmed that he had been advised of his right to subpoena, confront and cross-examine witnesses. The defendant confessed that he did effect the death of the victim

and that he understood that the only punishment could be life in prison. He confirmed in open court that no one who represented the state had made any threats, promises or coerced him to enter the plea. Mr. Mosier acknowledged satisfaction with the quality of representation by George Farrar. Mr. Mosier's guilty plea was accepted.

Although Mr. Mosier did not appeal his conviction to the Oklahoma Court of Criminal Appeals, he did file an application for post-conviction relief in the District Court of Mayes County in which he claimed that the guilty plea was obtained through coercion and duress the result of inadequate assistance of counsel due to the alleged conflict of interest and that the trial court failed to comply with due process in accepting the plea. The court conducted an evidentiary hearing at which petitioner was represented by a court appointed attorney. Petitioner's application was denied by the district court which stated "that the defendant's plea was voluntarily made by the defendant who knowingly, intelligently and in the absence of coercion made his own decision to abort his trial by jury and plead guilty." Petitioner's appeal to the Court of Criminal Appeals was unsuccessful as that court affirmed.

Petitioner initiated his federal habeas corpus action which is the subject of this appeal. The issue presented by Mr. Mosier in this appeal is whether his attorney's additional representation of Mr. Mosier's wife and mother-in-law, who benefited from the guilty plea, created a conflict of interest for the attorney such as to deprive defendant Mosier of effective assistance of counsel.

In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, the Supreme Court required state trial courts to investigate timely objections to multiple representation but did not require inquiries into every instance of multiple representation. Both in *Holloway* and *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, the Court recognized

that defense attorneys are in the best position to determine when a conflict is likely to or has arisen and they have an ethical obligation to advise the trial court in such instances. Therefore, in most cases, "trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.... Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." 446 U.S. at 347, 100 S.Ct. at 1717.

In *Cuyler v. Sullivan* the Court pointed to a number of elements of that case which indicated that the trial court should not have suspected any real conflict. First, the provision of separate trials for Sullivan and his co-defendants significantly reduced the potential for conflict. The opening argument of Sullivan's attorney did not implicate any of the other defendants and was consistent with the view that none of the defendants were connected with the murders. The Court also seemed impressed with the apparent willingness of Sullivan's attorney to call in Sullivan's defense witnesses whose testimony might be needed at the trials of the co-defendants whose conflicting interest Sullivan's attorney was allegedly representing. Lastly, the Court noted that there was no objection by anyone at Sullivan's trial to the multiple representation. 446 U.S. at 347, 100 S.Ct. at 1717. Under such circumstances the Supreme Court held that the Sixth Amendment did not impose upon the trial court an affirmative duty to inquire into the propriety of a multiple representation. *Id.* at 348, 100 S.Ct. at 1718.

A review of the facts of the case presented in this appeal reveals a similar set of circumstances. John Mosier was tried separately from his putative co-defendants, Denise Mosier and Wanda Cable. There is no indication that attorney Farrar presented a defense which was inconsistent with the innocence of his wife and mother-in-law. And, just as the Supreme Court in *Cuyler v. Sullivan* was impressed with the apparent willingness of Sullivan's attorney to call witnesses who might later be called

in the co-defendants' trials, Wanda Cable was called by attorney Farrar as a witness for John Mosier. Indeed, the trial court judge was impressed enough with the defense that when taking Mr. Mosier's plea he commented that Mr. Farrar's representation at trial was not only adequate but very effective. Lastly, as in *Cuyler v. Sullivan,* there was no objection by anyone at trial to the multiple representation. This is particularly probative in light of the Court's acknowledgment in *Cuyler v. Sullivan* that the trial court must necessarily rely in large measure upon the good faith and good judgment of defense counsel. 446 U.S. at 347, 100 S.Ct. at 1717. Thus stated, we find nothing in the facts of this case which required the trial court to inquire into the propriety of the multiple representation.

■ Since the Supreme Court decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, ineffective assistance of counsel claims have been evaluated in a two-step inquiry. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064. In the context of a guilty plea alleged to be based on inadequate legal advice this requires a showing that the advice was not "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763. The second step in an effective assistance of counsel analysis is whether the deficient performance prejudiced the defendant. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. In certain Sixth Amendment contexts, prejudice will be presumed from the existence of error. And while multiple representation is not such a *per se* violation of the Sixth Amendment, the Supreme Court

in *Strickland v. Washington* said that a conflict of interest claim is one type of an actual ineffectiveness claim which warrants a limited presumption of prejudice. 466 U.S. at 692, 104 S.Ct. at 2067; *United States v. Dressel*, 742 F.2d 1256, 1260 (10th Cir.1984). However, such prejudice is presumed only if the defendant demonstrates that counsel was in fact deficient in that he *"actively* represented conflicting interests." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (emphasis added); *United States v. Burney*, 756 F.2d 787, 791 (10th Cir.1985). The defendant who fails to raise the objection at trial must show not a possible conflict but an actual conflict and that it adversely affected his lawyer's performance. 446 U.S. at 348, 100 S.Ct. at 1718.

■ A clear example of the fairness of attorney Farrar's representation was his appraisal and communication to Mr. Mosier of the benefits to be derived from the plea bargain. On its face it seems obvious that the guilty plea spared John Mosier from potential exposure to capital punishment and that by itself could justify accepting the plea. *Hopkins v. Anderson*, 507 F.2d 530 (10th Cir.1974). However, attorney Farrar presented along with the plea proposal his own opinion that a death sentence would be unlikely and therefore the plea bargain would not effectively reduce his likely punishment. Further, he advised Mr. Mosier that by accepting the plea arrangement he would forego the opportunity to pursue on appeal any of the errors which they had raised in the hearings and at trial. The attorney also said that he thought there was a fair chance to overturn the jury verdict and that he was prepared to pursue the appeal. After pointing out these drawbacks to the plea the attorney also told defendant Mosier that if he didn't accept the plea and the jury returned a guilty verdict the prosecution would likely file charges against Wanda Cable and proceed with the already filed charges against Denise Mosier. Such advice clearly informed Mr. Mosier that the central benefit to be derived from the guilty plea would be the protection of his wife and mother-in-

law from prosecution. We think such advice fairly presented the ramifications of the contemplated guilty plea and is well within the range of required competence.

■ We cannot conclude that Mr. Mosier's Sixth Amendment rights were violated because much of the benefit of his plea bargain was bestowed upon third persons. We recognize that threats to prosecute or promises of leniency to third persons to induce guilty pleas can pose a danger of coercion. Aside from requiring special care to insure that the plea was in fact entered voluntarily and was not the product of coercion, we must respect the defendant's choice and "[i]f [an accused] elects to sacrifice himself for such motives, that is his choice...." *Kent v. United States*, 272 F.2d 795, 798 (1st Cir.1959); *see also United States v. Nuckols*, 606 F.2d 566 (5th Cir.1979); *Crow v. United States*, 397 F.2d 284 (10th Cir.1968). We agree with the recognition in the *Nuckols* decision that the inclusion of such third persons can increase the leverage possessed by prosecutors and therefore imposes upon them a high standard of good faith. 606 F.2d at 568.

In this instance, charges had already been filed in the same county against defendant's wife before any serious plea discussions commenced. Conspiracy charges in Texas were also already filed against Wanda Cable in connection with the case against Mr. Mosier. Further support for suspicion of Wanda Cable's participation was provided by Mr. Mosier in his post-conviction proceeding when he testified that he expected her to eventually confess to the crime thereby absolving him of guilt. We think the prosecution in this instance offered the dismissal of pending charges against defendant's wife and mother-in-law in good faith.

We agree with the district court's denial of habeas corpus relief as the record demonstrates that the appellant's plea was voluntarily entered and his decision to so

plead was arrived at with the complete and effective assistance of his counsel.

AFFIRMED.