UNITED STATES of America,
Respondent–Appellee,

v.

Harvey Russell WRIGHT, Jr.,
Petitioner–Appellant.

No. 92–6368.

United States Court of Appeals,
Tenth Circuit.

Dec. 14, 1994.

---

Stephen Jones, of Jones & Wyatt, Enid, OK, for petitioner-appellant.

William G. Pharo (James R. Allison, Interim U.S. Atty., Denver, CO, with him on the briefs), Asst. U.S. Atty., Denver, CO, for respondent-appellee.

Before TACHA and SETH, Circuit Judges, and LUNGSTRUM *, District Judge.

TACHA, Circuit Judge.

Appellant Harvey Russell Wright, Jr. pleaded guilty to distributing cocaine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to two years in the custody of the Attorney General and a three-year special parole term. After his release from prison but before his parole term had expired, appellant filed a petition for Writ of Error Corum Nobis with the United States District Court for the Western District of Oklahoma. In his petition, appellant claimed that the prosecution (1) breached its informal immunity agreement with appellant, (2) withheld requested material evidence, and (3) coerced appellant's guilty plea by threatening to indict members of his family. The district court denied appellant's petition, and he now appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 2255 and affirm in part and remand in part.

## I. Background

On April 13, 1987, a federal grand jury returned a twenty-six count indictment against defendant, each count involving the possession or distribution of cocaine or marijuana. On April 21, 1987, appellant filed several motions, including a Motion to Dismiss the Indictment ("motion to dismiss") and a Motion and Memorandum for Disclosure of Impeaching Information ("motion for disclosure"). The motion to dismiss alleged that the government had violated the informal immunity agreement it had reached with appellant. According to appellant, prosecutors assured him in their agreement that he was not "nor would he become the subject of an investigation so long as he did not lie or commit perjury before the grand jury." The disclosure motion requested specific information, including the disclosure of "[a]ny and all consideration or promises of consideration given to or on behalf of the witness or expected or hoped for by the witness."

By written order dated May 13, 1987, the district court granted appellant's motion for disclosure and directed the government to provide the defense with the requested information twenty days prior to trial. One week later, the district court denied appellant's motion to dismiss; appellant immediately appealed this ruling.

On the morning his trial was to begin, appellant reached a plea agreement with the prosecution. Appellant agreed to plead guilty to one count of distributing cocaine and to dismiss his appeal from the district court's denial of his motion to dismiss the indictment. In exchange, the government dismissed the other twenty-five counts included in the indictment. After accepting his plea, the court sentenced appellant to two years in the custody of the Attorney General and a three-year special parole term.

After his release from prison, appellant discovered that, contrary to the evidence disclosed by the prosecution prior to trial, the government had reached informal immunity agreements with several of its witnesses against appellant. According to appellant, each of these agreements was nearly identical to the agreement appellant thought he had reached with the prosecution. Upon re-

---

* The Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation.

lease of his complete government file, appellant also discovered that the government never had sufficient evidence to indict any members of his family.

On August 30, 1990, appellant filed a petition for Writ of Error Corum Nobis with the district court. His petition contained three claims. First, he asserted that the prosecution violated its agreement not to prosecute appellant if he testified before the grand jury. Appellant claimed that he divulged self-incriminating evidence before the grand jury only after receiving assurances from Assistant United States Attorney Watson ("AUSA Watson") that he was not the target of a government investigation and that he would not be prosecuted. Second, he claimed that the prosecution withheld requested evidence of similar informal immunity agreements it had reached with several witnesses. Finally, he claimed that the prosecution had coerced him into pleading guilty by threatening to indict several members of his family on mail fraud charges.

Because appellant was still in government custody as a parolee, the court treated his petition as a request for relief pursuant to 28 U.S.C. § 2255. The government moved to dismiss appellant's petition on summary judgment, but the court denied the government's motion and held a three-day evidentiary hearing.

By written order dated September 16, 1992, the district court denied appellant's petition. The court held that appellant's first two claims were procedurally barred due to his failure to raise them on direct appeal. With respect to appellant's third claim, the court found that the prosecution had investigated the members of appellant's family in good faith. Thus, even if the prosecution had made the threats alleged in appellant's petition, it had not violated appellant's right to due process. Appellant now appeals the district court's order.

## II.  Violation of Appellant's Non–Prosecution Agreement

■  Appellant first claims that the prosecution denied him due process by breaching an informal immunity agreement used to induce appellant to testify at two grand jury proceedings. A defendant who knowingly and voluntarily pleads guilty[1] waives all non-jurisdictional challenges to his conviction. *United States v. Gines,* 964 F.2d 972, 977 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993); *United States v. Hickok,* 907 F.2d 983, 985 (10th Cir.1990). Having pleaded guilty, a defendant's only avenue for challenging his conviction is to claim that he did not voluntarily or intelligently enter his plea. *Mabry v. Johnson,* 467 U.S. 504, 508–09, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437 (1984); *Barker v. United States,* 579 F.2d 1219, 1226 (10th Cir.1978).

■  In this case, appellant was fully cognizant of the alleged governmental misconduct when he entered his plea. Instead of pursuing these claims further, he decided to accept the prosecution's plea bargain. By doing so, appellant waived any claim that the government breached its non-prosecution agreement with him. While appellant's allegations, if true, demonstrate troublesome conduct by the prosecution, they do not call into question the knowing and voluntary nature of his plea. Appellant is therefore barred from raising such a claim in his section 2255 petition.

## III.  Failure to Disclose Non–Prosecution Agreements

Appellant next claims that the government violated his right to due process by withholding evidence of informal immunity agreements it had reached with several of its witnesses. Appellant asserts that, in his motion to disclose, he specifically requested the disclosure of all such agreements the prosecution reached with its witnesses. Moreover, the district court ordered the prosecution to disclose the requested information twenty days before trial. Appellant claims that, by suppressing this evidence, the prosecution denied him due process under the standards of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v.*

---

1.  For purposes of addressing appellant's first claim, we assume that the his plea was not the result of coercion. We address appellant's claim that his plea was coerced *infra.*

*United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

### A.

■ Again, a defendant who has pleaded guilty may thereafter only challenge the voluntariness of his plea. *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). Nevertheless, pleading guilty does not preclude a defendant from claiming that his plea was the product of prosecutorial "threats, misrepresentations, or improper promises." *Bradbury v. Wainwright,* 658 F.2d 1083, 1086 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982); *see also Crow v. United States,* 397 F.2d 284, 285 (10th Cir.1968). Such claims directly challenge the voluntary and intelligent nature of the plea. *Bradbury,* 658 F.2d at 1086.

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. at 87, 83 S.Ct. at 1196. In *Giglio,* the Court extended its holding in *Brady* to include evidence affecting the credibility of the government's witnesses. 405 U.S. at 154, 92 S.Ct. at 766. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Id.* (quoting *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). And in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court reaffirmed its holdings in *Brady* and *Giglio,* stating that the *Brady* rule extends to "[i]mpeachment evidence ... as well as exculpatory evidence [because] ... if disclosed and used effectively, [impeachment evidence] may make the difference between conviction and acquittal." *Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380.

This court has yet to address whether a defendant who has pleaded guilty can raise a *Brady* or *Giglio* claim in his section 2255 petition. The central question is whether the withholding of material evidence could taint a criminal proceeding so substantially that the defendant's decision to plead guilty could not

fairly be called knowing and intelligent. Most courts have held that defendants who have pleaded guilty are not barred from raising *Brady* claims in their petitions for post-conviction relief. *See, e.g., White v. United States,* 858 F.2d 416, 422 (8th Cir.1988) (the Supreme Court's guilty plea cases "do[ ] not preclude a collateral attack upon a guilty plea based on a claimed *Brady* violation"), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989); *Campbell v. Marshall,* 769 F.2d 314, 321 (6th Cir.1985) (entertaining defendant's *Brady* claim on the grounds that the Supreme Court's guilty plea cases "did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes as knowing and intelligent"), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986); *Fambo v. Smith,* 433 F.Supp. 590, 598–99 (W.D.N.Y.), *aff'd,* 565 F.2d 233 (2d Cir.1977) (per curiam). *But see Smith v. United States,* 876 F.2d 655, 657 (8th Cir.) (holding that, by pleading guilty, defendant waived claim that government failed to disclose favorable evidence), *cert. denied,* 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); *United States v. Ayala,* 690 F.Supp. 1014, 1016 (S.D.Fla.1988) (stating that a *Brady* violation does "not affect the consensual nature of the plea thereby impairing its validity").

The Supreme Court has often reiterated that a defendant's guilty plea must be knowing and intelligent to be a constitutional basis for conviction. As the Court stated in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), a guilty plea

> is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

*Id.* at 748, 90 S.Ct. at 1468; *see also Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (although "a guilty plea represents a break in the chain of events which has preceded it in the criminal

process," a defendant may subsequently challenge the "intelligent character" of his plea); *McMann v. Richardson,* 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970) (a guilty plea is "a waiver of trial" and therefore "must be an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences' ") (quoting *Brady v. United States,* 397 U.S. at 748, 90 S.Ct. at 1468). This court's decisions have also emphasized that a defendant's guilty plea must be entered knowingly. *See, e.g., United States v. Gomez–Cuevas,* 917 F.2d 1521, 1524 (10th Cir.1990) ("A defendant's guilty plea must be knowing and voluntary."); *Bradbury,* 658 F.2d at 1086 ("Since a guilty plea is a waiver of trial, it must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.") (internal quotations omitted).

In light of these decisions, as well as the importance to the integrity of our criminal justice system that guilty pleas be knowing and intelligent, we hold that, under certain limited circumstances, the prosecution's violation of *Brady* can render a defendant's plea involuntary. As the court stated in *Fambo,*

> [w]ithout [the clearly exculpatory] evidence before it, the trial court which accepted the plea could not, in fact, satisfy itself in any meaningful sense that petitioner's guilty plea was voluntarily and intelligently made by an informed defendant with adequate advice of counsel, and that there was nothing to question the accuracy and reliability of this defendant's admission that he had committed the crime with which he had been charged.

433 F.Supp. at 599. Thus, a defendant who has pleaded guilty is not automatically barred from claiming in his section 2255 petition that the prosecution withheld material evidence. Of course, even if a *Brady* violation is established, "habeas relief would clearly be the exception." *White,* 858 F.2d at 422.

---

**2.** The district court held that appellant had failed to show cause and that he had not demonstrated a fundamental miscarriage of justice. Because

## B.

A defendant is procedurally barred from presenting any claim in a section 2255 petition that he failed to raise on direct appeal unless he can demonstrate cause for his procedural default and prejudice suffered thereby, or that the failure to hear his claim would result in a fundamental miscarriage of justice.[2] *United States v. Warner,* 23 F.3d 287, 291 (10th Cir.1994). We need not address whether this test bars appellant from asserting his *Brady* claim because, even assuming it is not procedurally barred, the claim fails on its merits.

The duties imposed by *Brady* and *Giglio* do not require a prosecutor "to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Bagley,* 473 U.S. at 675, 105 S.Ct. at 3379 (footnote omitted). As the Court stated in *Brady,* the prosecution's suppression of exculpatory or impeachment evidence violates due process only when the evidence "is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196. In this context, " 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Ballinger v. Kerby,* 3 F.3d 1371, 1376 (10th Cir.1993) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.)).

Appellant claims that, had the prosecution disclosed the evidence of its pocket immunity agreements, he would have established "[AUSA] Watson's *pattern* of threatening reluctant witnesses with criminal prosecution while simultaneously promising pocket immunity." Appellant contends that, if he had established this pattern, the district court would have upheld his motion to dismiss the indictment. Thus, to determine whether the allegedly suppressed evidence is material for purposes of *Brady* and *Giglio,*

---

we address the merits of appellant's claim, we do not address the district court's findings on this issue.

we must decide whether it is reasonably probable that the proceeding's result—the district court's denial of appellant's motion to dismiss—would have been different had the prosecution properly disclosed the evidence requested by appellant. After carefully reviewing the district court's decision to deny appellant's motion to dismiss, we find that it is not reasonably probable that, had the allegedly suppressed evidence been presented to the district court, the court would have ruled differently. In its order, the district court properly stated that an indictment may be dismissed for prosecutorial misconduct only where such misconduct "is flagrant to the point that there is some significant infringement on a grand jury's ability to exercise independent judgment." *See United States v. Pino*, 708 F.2d 523, 530 (10th Cir. 1983). Appellant argued in his motion to dismiss that his indictment was based on self-incriminating grand jury testimony that he agreed to give only after AUSA Watson had assured him that he would not be prosecuted. The district court found, however, that "when defendant's grand jury testimony and the indictment are compared, . . . in accordance with the representations of the government, the defendant was indicted on evidence *distinct from* his challenged grand jury testimony."

Appellant argues in this petition that, had the prosecution disclosed all of its informal immunity agreements, he could have proven that the prosecution had reached (and then breached) a similar agreement with him. The district court's order denying appellant's motion to dismiss makes clear, however, that the existence of such an agreement was irrelevant to its decision. The alleged agreement could not have "significant[ly] infringe[d] on [the] grand jury's ability to exercise independent judgment" because appellant's indictment was based on evidence other than his disputed grand jury testimony.

Because appellant would have used the allegedly suppressed evidence to establish that the government had violated its non-prosecution agreement with appellant, and the existence of such an agreement was irrel-

evant to the district court's denial of appellant's motion, the disputed evidence was not "material either to guilt or to punishment" for purposes of *Brady* and *Giglio*. Consequently, the prosecution's failure to disclose any informal immunity agreements it had with its witnesses did not violate appellant's right to due process.

## IV. Threats to Indict Appellant's Family Members

Finally, appellant claims that the prosecution coerced him into pleading guilty by threatening to indict members of his family. According to appellant, on the morning his trial was to begin, the government threatened to indict several members of his family if he did not agree to plead guilty.[3] Appellant contends that, although he knew his family members were innocent when the prosecution made the threats, he did not learn that the government lacked sufficient evidence with which to indict them until after he had been released from prison.

■ At his sentencing hearing, appellant testified that his guilty plea was knowing and voluntary, that the government had made no promises in exchange for his plea, and that he had not been coerced or threatened. A defendant who "has made an affirmation of voluntariness and has pled guilty . . . carries a heavy burden" in subsequently claiming that his plea was involuntary. *United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992). Nevertheless, such statements do not stand as an absolute bar to post-conviction relief. *Blackledge v. Allison*, 431 U.S. 63, 74–75, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Appellant may still claim that his "representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation" that they rendered his "guilty plea a constitutionally inadequate basis for imprisonment." *Id.* at 75, 97 S.Ct. at 1629.

■ Appellant may nonetheless be barred from seeking post-conviction relief pursuant to section 2255 due to his failure to

---

**3.** According to appellant, he was particularly concerned about the possible indictment of his

father, who was ill with a serious heart condition at the time.

raise this claim at any point previously. As discussed above, to raise a claim for the first time in a section 2255 petition, a defendant must demonstrate either cause and prejudice or a fundamental miscarriage of justice. *Warner,* 23 F.3d at 291. Appellant contends that he has demonstrated cause for his procedural default because, at the time he could have filed a direct appeal, he believed his family members were still vulnerable to indictment.

The District of Columbia Circuit addressed a similar claim in *United States v. Pollard,* 959 F.2d 1011 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992). Like appellant, the defendant in *Pollard* claimed for the first time in his section 2255 petition that the prosecution had coerced him into accepting his plea agreement. He contended that he could not have raised his claim on direct appeal because his plea was "wired" to his wife's, who was also being prosecuted. As a result, any challenge to his plea made before his wife's sentence was final would have placed her in further jeopardy, the very result he sought to avoid in entering his plea agreement.

The *Pollard* court held that the defendant was not barred from raising his claim for the first time on collateral attack. *Id.* at 1019. If the defendant had been coerced into accepting his plea to protect his wife, "he could not be expected to openly challenge that very arrangement as unlawful while his wife was still vulnerable." *Id.* In other words, the coercion that formed the basis of his claim "deterred [him] from raising that argument until his wife was out of harm's way." *Id.*

We find the reasoning of *Pollard* persuasive. Where the coercive threat still exists at the time the defendant was supposed to file his direct appeal, he has cause to claim on collateral attack that his plea was involuntary. To hold otherwise would force defendants to choose between jeopardizing the persons they are attempting to protect and waiving their claims of unlawful coercion. In this case, the district court did not make factual findings as to (1) whether the prosecution actually communicated the alleged threats, and (2) if so, whether the threats caused appellant to plead guilty. If appellant establishes these facts, he has cause for having failed to raise his claim on direct appeal.

To show prejudice, appellant must demonstrate that he "was denied 'fundamental fairness,' " *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986), or that, but for the error, he "might not have been convicted," *Reed v. Ross,* 468 U.S. 1, 12, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984). In the context of a guilty plea, appellant must show that there is a "reasonable probability" that, absent the alleged coercion, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Appellant has alleged that, but for the threats against his family, he would have proceeded to trial. Under these circumstances, the government's threats, if they were made, were clearly prejudicial. Thus, if appellant can establish the factual bases for demonstrating cause (including that the prosecution actually communicated the threats), he has cleared the hurdle of cause and prejudice. We therefore address the merits of his claim.

This court has held that government threats to prosecute third persons during plea negotiations are not necessarily unconstitutional. *See Mosier v. Murphy,* 790 F.2d 62, 66 (10th Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986). But because such bargaining "can pose a danger of coercion" and "increase the leverage possessed by prosecutors," the government must abide by "a high standard of good faith" in its use of such tactics. *Id.; see also United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir.1979). The Supreme Court has warned that plea bargains involving "adverse or lenient treatment for some person *other* than the accused ... might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978) (citation omitted). Thus, "[a] plea agreement entailing lenity to a third party imposes a special responsibility on the district court to ascertain [the] plea's voluntariness ... due to its coercive potential." *Whalen,* 976 F.2d at 1348 (internal quotations omitted).

This court has yet to define what practical requirements this "high standard of good faith" imposes on prosecutors. Most courts have held that, to act in good faith, prosecutors must have probable cause to indict the third person at the time they offer lenity or communicate the threat. *See, e.g., United States v. Marquez,* 909 F.2d 738, 742 (2d Cir.1990) ("Where the plea is entered after the prosecutor threatens prosecution of a third party, courts have afforded the defendant an opportunity to show that probable cause for the prosecution was lacking when the threat was made."), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); *Martin v. Kemp,* 760 F.2d 1244, 1247–48 (11th Cir.1985) (holding that defendant demonstrated that the "government did not observe a 'high standard of good faith' based upon probable cause to believe that the third party had committed a crime"); *United States v. Diaz,* 733 F.2d 371, 375 (5th Cir. 1984) ("Good faith is established when the prosecutor has probable cause to bring charges."); *Harman v. Mohn,* 683 F.2d 834, 837 (4th Cir.1982) (stating that " 'absent probable cause to believe that the third person has committed a crime, offering "concessions" as to him or her constitutes a species of fraud' ") (quoting *Nuckols,* 606 F.2d at 569).

The most analogous decision in our circuit is *Whalen.* In that case, a section 2255 petitioner alleged that the government had coerced him into pleading guilty by threatening to prosecute his wife. *Whalen,* 976 F.2d at 1348. He asserted that, although he subsequently learned that the government had no intention of charging his wife, he believed the threats at the time they were made and therefore pleaded guilty. *Id.* at 1348–49. This court noted that the government had

not demonstrated "what probable cause it had, if any, to charge Whalen's wife with a crime." *Id.* 1349. We therefore held that, were the petitioner's allegations true, he was entitled to relief. *Id.*

Considering the rationale of *Whalen,* as well as the weight of authority from other circuit courts, we hold that the standard of good faith requires probable cause: To lawfully threaten third persons with prosecution ·during the course of plea negotiations, the government must have probable cause that those third persons committed the crime that the government threatens to charge.[4]

Applying this rule to the case at bar, we find that the district court failed to apply the appropriate legal standard for ascertaining good faith. In its order denying appellant's petition, the district court stated that it "accept[ed] the Government's assertions that any investigation of Petitioner Wright's family was being conducted in good faith under the law as it existed at the time of that investigation." The court did not examine whether the prosecution had probable cause to indict any of appellant's family members at the time it allegedly made the threats. Its finding that the prosecution acted in good faith was based purely on the government's assertions to that effect.

At the evidentiary hearing, appellant offered evidence plausibly showing that the prosecution never had the requisite probable cause. In response, the government merely averred that the prosecution had acted in good faith.[5] On this record, there is no evidence from which to conclude that the prosecution had probable cause to indict those persons it allegedly threatened to indict. If the prosecution actually made the alleged threats, the threats caused appellant

---

**4.** Nothing in our holding restrains prosecutors from offering to halt criminal investigations of third persons that are initiated in good faith as consideration in plea negotiations. For instance, if an investigation into a third person has not yet uncovered enough evidence to constitute probable cause, the prosecution could still offer to cease that investigation in exchange for the defendant pleading guilty. In such a case, the prosecution is acting "with a high degree of good faith" because it is not claiming to be capable of doing more than the law permits. Our holding only prevents the prosecution from making threats that it cannot legally carry out, i.e.,

threatening to indict third persons when it does not have probable cause with which to do so.

**5.** Aside from the probable cause issue, the government contended that prosecutors never made the alleged threats. AUSA Watson testified that the prosecution never threatened to indict members of appellant's family. In contrast, appellant's trial counsel, Mr. D.C. Thomas, who participated in the plea negotiations, testified that the prosecution told appellant that members of his family "would be indicted and prosecuted for mail fraud" if he did not plead guilty. Because

**500**

to plead guilty, and the threats were not supported by probable cause, the prosecution violated appellant's right to due process. We therefore remand to the district court for these factual findings.

### V. Conclusion

We affirm the district court's denial of appellant's petition with respect to his claims that the prosecution unlawfully violated appellant's informal immunity agreement and withheld material evidence. We remand the case to the district court for further findings with respect to whether appellant has cause for his procedural default, including whether the prosecution actually threatened to indict members of his family and, if so, whether those threats caused appellant to plead guilty. If the district court finds such cause, it must then determine whether the prosecution had probable cause when it made the threats. The case is **REMANDED** for further proceedings in accordance with this opinion.

the district court concluded that the government conducted its investigation of appellant's family members in good faith, it did not reach the question of whether the prosecution had actually made the alleged threats.