# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-3589

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Steven J. Vest, also known as | * | Western District of Missouri |
| Norm, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 1997

Filed: October 2, 1997

_____

Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[*]
    District Judge.

_____

McMILLIAN, Circuit Judge.

---

*The Honorable Paul A. Magnuson, Chief Judge, United States District
Court for the District of Minnesota, sitting by designation.

Steven J. Vest (defendant) appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri denying defendant's motion to withdraw his guilty pleas and sentencing him to concurrent terms of life imprisonment on four counts charged in the indictment.[2] United States v. Vest, No. 94-00037-01-CR-W-8 (W.D. Mo. Sept. 9, 1996) (Judgment). For reversal, defendant argues that the district court erred in denying his motion to withdraw his guilty pleas because the pleas were coerced and thus involuntary. For the reasons discussed below, we affirm the judgment of the district court.

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed under Fed. R. App. P. 4(a).

### I. Background

Following a two-year investigation, defendant and more than twenty others, including three of defendant's brothers, were arrested in early 1994 for drug trafficking offenses. A criminal complaint was filed in early February 1994. Following further investigation and debriefings of several cooperating defendants and other witnesses, an indictment and, subsequently, two superseding indictments were filed, charging defendant and more than thirty others with related offenses, including: conspiracy to distribute cocaine and marijuana[3]; operation of a continuing criminal enterprise;

---

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

[2]Defendant was also sentenced to the following concurrent terms of imprisonment: 240 months on two counts, 120 months on three counts, and 60 months on one count.

[3]This count was later dismissed because conspiracy to distribute cocaine and marijuana is a lesser-included offense of the continuing criminal enterprise count.

-2-

possession with intent to distribute cocaine; distribution of cocaine; distribution of marijuana; arson of a building used in interstate commerce; interstate transportation of property obtained by fraud; multiple counts of money laundering; and multiple counts of capital murder under the continuing criminal enterprise statute, 21 U.S.C. § 848(e). In addition, defendant's interests in various real properties were the subjects of four forfeiture counts.

The Attorney General granted the government authority to seek the death penalty against defendant and two of his younger brothers, Mark Vest and James Vest, who were also charged in the capital murder counts.[4] Those counts were based upon the murders of Juan Manuel Bojorquez and Ernest Serafin Carbajal, Mexican nationals who had repeatedly delivered 5 to 10 kilogram amounts of cocaine to the Vests and their associates in the drug enterprise. Bojorquez and Carbajal transported the cocaine from Phoenix, Arizona, in a hidden compartment in their vehicle and usually delivered it to Mark Vest at his residence at 110 Spruce, Kansas City, Missouri, which was owned by defendant. Bojorquez and Carbajal arrived in Kansas City, Missouri, on October 27, 1992, and checked into a hotel. After their arrival, Arturo Gonzalez, Jr., met with defendant, James Vest, and Mark Vest at the residence, and defendant outlined a plan to kill Bojorquez and Carbajal in order to steal their cocaine. The following day, Gonzalez was ordered by the Vests to pick up Bojorquez and Carbajal at their hotel and bring them back to the residence. Upon entering the residence, defendant and James Vest pulled firearms and ordered the parties to "hit the floor." Defendant handcuffed Bojorquez and Carbajal, and James Vest duct taped their feet together. James Vest then duct taped their mouths and proceeded to wrap their faces in the tape. Bojorquez and Carbajal suffocated. The bodies were transported in a van which had been procured by Mark Vest and were buried in a shallow grave which had

---

[4]Mark Vest and James Vest pleaded guilty to the capital murder counts on January 15, 1996, and January 2, 1996, respectively, and, like defendant, were sentenced to concurrent terms of life imprisonment.

been dug the night before. After agreeing to cooperate with the government in the prosecution of this case, Gonzalez informed investigators of the murders and led authorities to the bodies on March 13, 1994.[5]

On January 15, 1996, defendant pleaded guilty to all counts with which he was charged, admitting each element of each offense, in exchange for a stipulated sentence of life imprisonment and the government's agreement not to seek the death penalty. A condition of defendant's plea agreement was that, if defendant pleaded guilty, Mark Vest would be allowed to plead guilty and would not face the death penalty.

Prior to sentencing, defendant moved to withdraw his guilty pleas on three grounds: (1) the government withheld exculpatory evidence; (2) he was coerced into entering the pleas by the condition involving Mark Vest's ability to plead guilty and avoid the death penalty; and (3) he was coerced by the possibility that his wife would lose her house if he did not plead guilty. See Tr. of Sentencing Proceedings at 4:15-4:24. (Aug. 5-6, 1996). Following the testimony of several witnesses at the sentencing hearing, the district court denied defendant's motion to withdraw his pleas. Id. at 234:16-235:10, 236:23-237:20. The district court then sentenced defendant to concurrent terms of life imprisonment on four counts, 240 months on two counts, 120 months on three counts, and 60 months on one count. Judgment at 2. This appeal followed.

## II. Discussion

We normally review a district court's denial of a presentence motion to withdraw a guilty plea for an abuse of discretion. United States v. Jones, 111 F.3d 597, 601 (8th Cir. 1997); United States v. Abdullah, 947 F.2d 306, 311 (8th Cir. 1991), cert. denied,

---

[5]The facts underlying the capital murder counts were admitted by defendant at his plea hearing. Brief for Appellee at 9 n.7, citing Tr. of Plea Hearing at 30-34, 46.

504 U.S. 921 (1992). However, where the district court's decision hinges upon the voluntariness of the defendant's guilty plea, a mixed question of law and fact is presented and is subject to our independent, or de novo, review. United States v. Morgan, 958 F.2d 847, 849 (8th Cir.), cert. denied, 504 U.S. 990 (1992).

Defendant argues that the district court erred in denying his motion to withdraw his guilty pleas because he entered into them involuntarily. Defendant's only contention on appeal is that the government coerced him into entering the guilty pleas by promising to allow defendant's brother, Mark Vest, to plead guilty and avoid the death penalty in exchange for defendant's guilty pleas. Defendant maintains that one of the major inducements for pleading guilty, the government's promise of lenient treatment for Mark Vest, "'might pose a great danger of inducing a false guilty plea by skewing the assessment of the risks [] defendant might consider.'" Brief for Appellant at 8, quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 n.8 (1978) (Bordenkircher). Defendant contends that he should have been allowed to withdraw his guilty pleas prior to sentencing because the coercive circumstances surrounding the plea agreement made them involuntary.

We disagree and hold that the district court did not err in denying defendant's motion to withdraw his guilty pleas. The factors to be considered by the district court in determining whether to grant a motion to withdraw a guilty plea before sentencing are:

> (1) whether defendant established a fair and just reason to withdraw his plea; (2) whether defendant asserts his legal innocence of the charge; (3) the length of time between the guilty plea and the motion to withdraw; and (4) if the defendant established a fair and just reason for withdrawal, whether the government will be prejudiced.

Abdullah, 947 F.2d at 311, quoting United States v. Boone, 869 F.2d 1089, 1091-92 (8th Cir.), cert. denied, 493 U.S. 822 (1989); see also Fed. R. Crim. P. 32(e). However, "[i]f the defendant does not present a fair and just reason for withdrawal of a guilty plea, no need exists for the district court to examine the other Boone factors." Abdullah, 947 F.2d at 311.

Defendant presents no fair and just reason for granting his motion to withdraw. "To prove that his plea was not a knowing and voluntary plea, [defendant] must show that he did not make a voluntary and intelligent choice among the alternative courses of action." Weisberg v. Minnesota, 29 F.3d 1271, 1278 (8th Cir.) (Weisberg), cert. denied, 513 U.S. 1126 (1994). While the Supreme Court, in Bordenkircher, suggested cautious consideration of promises for lenient treatment, it held that "[d]efendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation." 434 U.S. at 363. Defendant has not presented any evidence that he did not understand the nature of the plea proceeding or that he entered his pleas involuntarily. See Weisberg, 29 F.3d at 1278. Moreover, during the Rule 11 inquiry conducted at the plea hearing, defendant admitted each element of every offense covered by the plea agreement and conceded that he had not been coerced into entering the guilty pleas. See Brief for Appellee at 13, citing Tr. of Plea Hearing at 16, 46-47. The plea and sentencing transcripts contain ample evidence that defendant understood the consequences of his guilty pleas and that he entered them voluntarily. See Weisberg, 29 F.3d at 1278.

Furthermore, so-called "wired" plea agreements, in which the agreement of one defendant is conditioned upon the similar agreement of another defendant, are not per se invalid. United States v. Wright, 43 F.3d 491, 498 (10th Cir. 1994); Weisberg, 29

F.3d at 1279.[6]  "Since a  defendant's plea is not rendered involuntary because he enters it to save himself [from the death penalty], it is difficult to see why the law should not permit the defendant to negotiate a plea that confers a similar benefit on others."  United States v. Marquez, 909 F.2d 738, 742 (2d Cir. 1990), cert. denied, 498 U.S. 1084 (1991).  Furthermore, "[i]t is the prosecutor's prerogative to offer a 'package deal' or no deal at all."  Nguyen v. United States, 114 F.3d 699, 704 (8th Cir. 1997) (citation omitted).  The condition that Mark Vest be allowed to plead guilty and avoid the death penalty only if defendant pleaded guilty is merely one factor to be considered in determining whether defendant's guilty pleas were voluntary.  See Weisberg, 29 F.3d at 1279. A plea agreement containing such a condition is proper so long as the government acts in good faith based upon probable cause to file charges against or to prosecute the third party named in the agreement.  Wright, 43 F.3d at 499; United States v. Bellazerius, 24 F.3d 698, 704 (5th Cir.), cert. denied, 513 U.S. 954 (1994).  There is nothing in the record to suggest that the government did not act in good faith in obtaining defendant's guilty pleas, and, in fact, it appears that he entered the guilty pleas not as an act of self-sacrifice for his brother, but rather as an attempt to avoid the harsher death sentence himself.  See United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996).  Therefore, we hold that the district court did not err in denying defendant's motion to withdraw his guilty pleas.

---

[6]See also United States v. Farley, 72 F.3d 158, 164 (D.C. Cir. 1995) (wired plea did not require district court to undertake a special voluntariness inquiry beyond that provided by Fed. R. Crim. P. 11); United States v. Bellazerius, 24 F.3d 698, 704 (5th Cir.) (guilty plea induced by promise of leniency toward defendant's wife was not involuntary), cert. denied, 513 U.S. 954 (1994); United States v. Marquez, 909 F.2d 738, 741-742 (2d Cir. 1990) (guilty plea was not involuntary even though defendant's wife's ability to plead guilty was contingent on defendant's pleading guilty), cert. denied, 498 U.S. 1084 (1991); United States v. Carasis, 863 F.2d 615, 616 (8th Cir. 1988) (guilty pleas were not coerced where plea agreements were contingent on all defendants pleading guilty); United States v. Bartoli, 572 F.2d 188, 189 (8th Cir.) (guilty plea was not coerced where entered by defendant pursuant to condition that indictment against defendant's father be dismissed), cert. denied, 438 U.S. 905 (1978).

### III. Conclusion

Accordingly, we affirm the judgment of the district court.

A true copy.

　　Attest:

　　　　CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.