839 So.2d 906 (2003)
Thadius STINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-957.
District Court of Appeal of Florida, Fifth District.
March 14, 2003.
*907 James B. Gibson, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
Thadius R. Stinson appeals the denial of his motion to withdraw his plea and vacate his sentence. We affirm.
Stinson was charged with two counts of robbery with a firearm,[1] possession of a firearm by a convicted felon,[2] carrying a concealed firearm,[3] and possession of drug paraphernalia.[4] On 17 January 2002, as the case was about to go to trial, the state offered Stinson a sentence of thirty years in prison in exchange for a guilty plea. The state told the court that if Stinson accepted the offer of thirty years in prison, Stinson's co-defendant, his brother, would be offered five years of probation. Stinson agreed and entered a plea of guilty to the lesser charge of robbery with a weapon, stating he understood that under the original charges he faced a life sentence as a prison releasee reoffender.[5] The state amended the information to reflect the lesser included charge and filed a nolle prosequi on the other four counts. The state informed the court that the factual basis for the plea was that a witness had seen Stinson rob the victims and leave in a car driven by his brother. The witness followed the car and flagged down police, who found the victims' jewelry in the car and, later, in Stinson's underwear. The trial court adjudicated Stinson guilty of robbery with a weapon, sentencing Stinson to the agreed 30 years.
*908 On 8 February 2002, Stinson moved to withdraw the plea, alleging that it was involuntary because he was under duress at the time he entered the plea. At the evidentiary hearing on his motion, Stinson testified that, in the interview room in the courthouse, he was told by his attorney that he would receive a sentence of ten years in exchange for a plea, but that the offer changed to thirty years when he was in the courtroom. According to Stinson, he learned that if he entered a plea, he would receive a sentence of 30 years, and his brother would receive five years of probation. When asked why he accepted the offer, Stinson testified that he felt he was in a no-win situation. He explained that, because his attorney had said they would not win at trial, Stinson felt his attorney would not defend the case as Stinson would like. Furthermore, he testified that his brother, sitting to the right of him, was crying. Stinson testified that he felt that he was stuck between a rock and a hard place. He testified: "It hurt me to see him crying like that, you know. He wanted out of the situation [and] I wanted out of the situation."
Stinson's attorney testified that the substance of the offer from the state was that Stinson would plead guilty to robbery with a weapon in exchange for a 30 year sentence. The offer of probation to the brother was contingent on Stinson's accepting the offer made to him. The attorney testified that he relayed this information to Stinson. The attorney testified that he also informed Stinson that he was prepared to go to trial.
A guilty plea must be entered voluntarily by one who is competent to know the consequences of the plea, and a trial court must carefully inquire into the voluntariness of the plea. See Lopez v. State, 536 So.2d 226, 228-229 (Fla.1988) (citing Mikenas v. State, 460 So.2d 359, 361 (Fla.1984)). The voluntariness of the plea is determined by considering the relevant surrounding circumstances. Brady v. United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The standard of review of an order denying withdrawal of a plea is abuse of discretion. See Robinson v. State, 761 So.2d 269 (Fla.1999).
By way of supplementary authority, Stinson cites U.S. v. Abbott, 241 F.3d 29 (1st Cir.2001). There, the court reversed an order denying the defendant's motion to withdraw his plea because the prosecutor did not inform the sentencing court of the connection between the defendant's plea and the probationary sentence received by the defendant's mother. Id. at 34-35. Thus, Stinson's contention would seem to be that his plea was involuntary because the offer of probation to his brother was contingent on Stinson accepting the state's offer to him. Stinson cites no similar Florida cases and our research has found none, so we turn to federal cases for instruction.
Plea agreements that are conditioned on the acquiescence of other defendants, so-called "package deals" or "wired" plea agreements, are not unconstitutional per se. See, e.g., United States v. Vest, 125 F.3d 676 (8th Cir.1997); United States v. Wright, 43 F.3d 491, 498 (10th Cir.1994); United States v. Marquez, 909 F.2d 738 (2nd Cir.1990); Politte v. United States, 852 F.2d 924, 930 (7th Cir.1988); Mosier v. Murphy, 790 F.2d 62, 66 (10th Cir.1986); Martin v. Kemp, 760 F.2d 1244, 1248 (11th Cir.1985); United States v. Diaz, 733 F.2d 371, 375 (5th Cir.1984); United States v. Usher, 703 F.2d 956, 958 (6th Cir.1983); Cortez v. United States, 337 F.2d 699, 701-702 (9th Cir.1964); Kent v. United States, 272 F.2d 795, 799 (1st Cir.1959). It is the prosecutor's prerogative to offer a package deal or no deal at all. Vest, 125 F.3d at 679 (quoting Nguyen v. United States, 114 F.3d 699, 704 (8th Cir.1997)).
*909 Nevertheless, the Supreme Court, while not ruling on the constitutionality of such agreements, has pointed out that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused ... might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." Bordenkircher v. Hayes, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Where the state threatens prosecution of one with whom the defendant has familial ties or other close bonds, the threat of coercion is much greater. United States v. Carr, 80 F.3d 413, 416-417 (10th Cir.1996). Of special concern with regard to such agreements is that one defendant, who hopes to obtain the more lenient sentence, might coerce another defendant to accept the package deal. See, e.g., United States v. Castello, 724 F.2d 813 (9th Cir.1984). It has been held that a plea agreement entailing leniency to a third party imposes a special responsibility on the trial court to ascertain the voluntariness of the plea because of its coercive potential. See, e.g., United States v. Whalen, 976 F.2d 1346 (10th Cir.1992); Abbott, 241 F.3d 29. For this reason, the trial court must be informed that a plea is part of a multi-party agreement. See Abbott, 241 F.3d 29.
In cases involving leniency toward a third party, or a promise not to prosecute a third party, the government must act in good faith. To act in good faith, the government must have probable cause to charge the third party at the time the defendant is offered leniency for the third party, or at the time the defendant is threatened that the third party will be charged. Wright, 43 F.3d at 499; Martin v. Kemp, 760 F.2d 1244, 1247-48 (11th Cir.1985); United States v. Diaz, 733 F.2d 371, 375 (5th Cir.1984); Harman v. Mohn, 683 F.2d 834 (4th Cir.1982); United States v. Canino, No. 96-271, 1997 WL 141864 (E.D. Penn March 25, 1997).
In the instant case, the state made its offers in open court, and explained to the court that the offer to the brother was contingent upon Stinson's accepting the offer made to him. Further, Stinson accepted the offer in open court, complaining only about the length of the sentence being offered. Accordingly, the trial court was aware of the circumstances surrounding Stinson's plea. Further, the court adequately inquired into the voluntariness of Stinson's plea. The court asked Stinson several times whether he was entering the plea voluntarily, and at the same time, it informed Stinson numerous times that he had the option of going to trial and that his attorney was prepared for trial. Further, there is no suggestion that the state was acting in bad faith. Indeed, the factual basis for Stinson's plea indicates that the state had a substantial case against both Stinson and his brother. Nor is there any suggestion that the brother exerted undue influence on Stinson. Stinson testified that his brother was crying, and he felt that he was in a no-win situation at the time of the plea, but concern for one's friends or loved ones does not render a plea involuntary as a matter of law, see e.g. Cortez, 337 F.2d at 700, and the fact that a defendant is presented with unpleasant alternatives does not render a guilty plea involuntary, see Bordenkircher, 434 U.S. at 365, 98 S.Ct. 663. The conviction is affirmed.
AFFIRMED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] §§ 812.13(2)(a); 775.087, Fla. Stat.
[2] §§ 790.23; 775.087(2)(a)(1), Fla. Stat.
[3] § 790.01(2), Fla. Stat.
[4] § 893.147(1), Fla. Stat.
[5] Stinson signed a written plea agreement. There are several paragraphs which are pertinent to our review:

Paragraph 5 reads: No one has promised me anything to get me to enter the plea(s) except as stated herein. The prosecutor has recommended the following: 30 [years] P.R.R. [Prison Releasee Reoffender]... I understand the maximum penalties for the charge(s) to be life....
Paragraph 7 reads: No one has pressured or forced me to enter the plea(s). I am entering the plea because: I believe it is in my own interest. I enter the plea(s) voluntarily of my own free will.
Paragraph 14 reads: I have read every word in this written plea, have discussed it with my lawyer, and fully understand it. I am fully satisfied with the way my lawyer has handled this case for me ... He/she has done everything I have asked him/her to do.