**UNITED STATES of America, Appellee,**

v.

**Lionel MARQUEZ,
Defendant–Appellant.**

**No. 1150, Docket 89–1609.**

United States Court of Appeals,
Second Circuit.

Argued April 25, 1990.

Decided July 26, 1990.

Lawrence A. Vogelman, New York City, (Barry C. Scheck, Ellen Yaroshefsky, New York City, on brief), for defendant-appellant.

Anne T. Vitale, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Joan McPhee, Asst. U.S. Atty., New York City, on brief), for appellee.

Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents the issue of whether a guilty plea is lawful where the Government informs the defendant that it will agree to a plea bargain in his wife's case only if he pleads guilty. The appeal also implicates the issue of whether the Government may obtain concessions from defense counsel by offering to release seized funds for payment of attorney's fees. These issues arise on an appeal by Lionel Marquez from the November 17, 1989, judgment of the District Court for the Southern District of New York (Gerard L. Goettel, Judge) convicting him upon his plea of guilty to charges involving drug trafficking and tax evasion. We conclude that the guilty plea was validly entered, that leave to withdraw the plea was validly denied, and that the judgment should be affirmed.

### Facts

On December 14, 1987, Government agents arrested Marquez and his wife for conspiracy to distribute narcotics and seized various items from their home, including $876,915 in cash. After indicting the couple and others on various charges, the Government obtained a restraining order against the cash, pursuant to the criminal forfeiture provisions of 21 U.S.C. § 853(e)(1)(A) (1988). Thereafter, this Court ruled that funds legitimately needed for living expenses, including attorney's fees, were not subject to restraint or forfeiture under section 853. *See United States v. Monsanto*, 852 F.2d 1400 (2d Cir.1988) (in banc), *rev'd*, —— U.S. ——, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989).

In the interim between this Court's decision in *Monsanto* and the Supreme Court's reversal of that decision, the Government initiated civil forfeiture proceedings against the cash seized from Marquez, pursuant to 21 U.S.C. § 881 (1988). Judge Goettel ruled that our decision in *Monsanto* controlled and ordered the Government to release $100,000 of the seized funds to pay the retainer of Marquez's lawyer and to release additional funds for legal fees, if needed. On the Government's appeal, we affirmed. *United States v. $876,915.00 United States Currency*, 874 F.2d 104 (2d Cir.1989). We also directed Judge Goettel to take all necessary steps, within reason, to bring the criminal case to trial at the earliest possible date. *Id.* at 107.

A pretrial conference was held in the criminal case on May 12, 1989. The Government informed Judge Goettel that the $100,000 check had not yet been turned over to Marquez's lawyer, Richard Rehbock. The prosecutor also announced that it would turn over the check only if Rehbock agreed to a firm trial date no later than June 12, 1989. The prosecutor added that, if agreement to such a date was not reached, it would ask the Supreme Court to stay the order requiring the turnover of

$100,000, anticipating that the Court would reverse *Monsanto,* which had already been argued. Rehbock strenuously objected, calling the Government's position "extortion" and contending that the Government "is putting me once again in the position of conflict of interest. I sacrifice my client's rights in exchange for mine." He told Judge Goettel · that he needed 60 days to prepare for trial and would be ready immediately after July 4.

Judge Goettel stated that he wanted to bring the case to trial quickly in view of the incarceration of Marquez and his wife and that "forgetting [the prosecutor's] position completely," he had "more or less fixed" on a trial date of June 12 before the Government announced its position. After being informed that counsel for Mrs. Marquez had a scheduling conflict, Judge Goettel set a trial date of June 19. That date was subsequently postponed to July 5.

On June 30, Marquez and his wife pled guilty pursuant to plea agreements. At that time Marquez was named in 23 counts of a superseding indictment, and his wife was named in 19 counts.[1] The indictment alleged various narcotics, gambling, racketeering, money laundering, and tax offenses, including a violation of 21 U.S.C. § 848(a) (1988) (continuing criminal enterprise). Marquez pled guilty to six counts, including the section 848(a) violation, and his wife pled guilty to three counts. The plea agreements included a stipulation that his sentence would be within the range of 240 to 293 months and his wife's sentence would be within the range of 121 to 151 months, significantly below the guideline range of 360 months to life, which the Government represented would apply to the facts of their most serious offenses. *See* U.S.S.G. § 6B1.2(c)(2).

On September 5, Marquez moved *pro se* to withdraw his guilty plea, pursuant to Federal Rule of Criminal Procedure 32(d). He alleged inadequate legal representation in that his lawyer was unprepared and had been interested only in obtaining a fee

from the seized funds. He also alleged that the circumstances concerning his wife put undue pressure on him to plead guilty and that he had had insufficient time to become aware of the plea agreement and to discuss it with his lawyer. A hearing was held on October 13, at which time his current counsel entered their appearances in substitution of Attorney Rehbock and filed supplemental motion papers. At the hearing, Rehbock testified that the $100,000 had been released to him on June 6 and that he had spent most of his time in June preparing for trial. He also testified to extensive conversations that he had had with Marquez both before and after discussing the general outlines of the plea agreement with senior officials of the United States Attorney's office. Finally he expressed his opinion that Marquez had pled voluntarily and that all of his answers to the Rule 11 allocution had been truthful. At the conclusion of the hearing, Judge Goettel denied the motion, finding that the plea was voluntary and that Marquez had been well represented by counsel. The District Judge acknowledged that part of Marquez's motivation to enter his plea may have been a desire to assist his wife, but concluded that this circumstance did not render the plea involuntary.

A few days later, Marquez was sentenced to an aggregate prison term of 23 years and fined $100,000. A judgment of forfeiture was also entered as to all of the seized assets.

## Discussion

■ On a Rule 32(d) motion to withdraw a guilty plea, a defendant has the burden of persuading the trial court that valid grounds for withdrawal exist, *United States v. Figueroa,* 757 F.2d 466, 475 (2d Cir.), *cert. denied,* 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985), and the court's decision that the burden has not been met will be reversed only if clearly erroneous, *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir.1977).

---

**1.** The indictment is identified as "SSSSSSSSS 87 Cr. 974". The profusion of S's, we are told, indicates that it is the ninth superseding indictment. Perhaps consideration might be given to designating such an indictment as "87 Cr. 974(S9)" or "87 Cr. 974–S9".

■ 1. Marquez contends, first, that his plea should have been withdrawn because he was denied the effective assistance of counsel, a claim he premises on the assertion that his former lawyer had a conflict of interest because of concern for obtaining a fee from the seized money. In this case, the release of the $100,000 to pay Rehbock's fee was ordered by this Court under the then applicable authority of our *Monsanto* decision. Rehbock had no conflict of interest in seeking and obtaining the benefit of that decision. However, the Government came perilously close to creating a conflict of interest situation by attempting to extract a concession from Rehbock concerning a trial date as a condition of its compliance with the order to turn over the funds. Fortunately, Judge Goettel wisely brushed aside the Government's position and set a trial date entirely independently of that position. The initial trial date, June 19, was set without regard to the $100,000 payment, which the Government was ordered to make without any concession on the part of Rehbock. Moreover, the initial trial date was later postponed to July 5, thereby giving Rehbock precisely the amount of trial preparation time that he had requested.

Although the Government's demand at the hearing was without consequence, the prosecution nonetheless seeks to justify its linkage of release of $100,000 of forfeited funds with starting the trial in 30 days by pointing out the reasons for beginning the trial promptly. Thus, the Government notes that this Court had expressed concern about a prompt trial in order to safeguard the speedy trial rights of Marquez's wife and because of the incarceration of Marquez and his wife. The prosecutor's solicitude for a speedy trial misses the point. Though the Government has an interest in compliance with speedy trial requirements, any attempt to use the prospect of getting the defendant's lawyer paid from seized funds as a bargaining chip to obtain a concession from the defendant poses the potential for a serious conflict of interest. Now that the Supreme Court has upheld the lawfulness of a pretrial seizure of forfeitable money, without an exception for reasonable expenses such as legal fees, trial courts must scrutinize with utmost care any effort by the Government to use its control of seized funds in negotiating with defense counsel. We need not rule in this case whether any such negotiation would affect the validity of concessions made by defense counsel, since no concession was made in this case. However, we caution that *if* such negotiations are valid, the informed consent of the defendant should be obtained on the record.

Marquez's claim that Rehbock devoted inadequate attention to representing him is belied by the record. As a result of Rehbock's efforts, the maximum sentence Marquez faced was reduced from life to 293 months, and the minimum was reduced from 360 to 240 months. The sentence ultimately imposed was seven years less than the minimum term Marquez faced before the plea agreement was negotiated. Moreover, Judge Goettel was entitled to credit Rehbock's testimony concerning the time devoted to trial preparation.

■ 2. Marquez next contends that his plea was involuntary because of the pressure on him arising from the Government's insistence that a plea bargain would not be offered to his wife unless he pled guilty. In *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978), the Supreme Court noted but found no need to consider "the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused." This Circuit appears not to have ruled on the matter, though all of the other circuits that have considered the issue have concluded that a plea is not invalid if entered (a) under a plea agreement that includes leniency for a third party or (b) in response to a prosecutor's justifiable threat to prosecute a third party if the plea is not entered: First Circuit, *Kent v. United States*, 272 F.2d 795, 798 (1st Cir.1959) (threat to prosecute defendant's fiancé); Fourth Circuit, *Harman v. Mohn*, 683 F.2d 834, 836–38 (4th Cir.1982) (dismissal of charges against defendant's wife); Fifth Circuit, *United States v. Diaz*, 733 F.2d

371, 375 (5th Cir.1984) (threat to prosecute defendant's sister and brother-in-law); Sixth Circuit, *United States v. Usher,* 703 F.2d 956, 958 (6th Cir.1983) (reduced sentence for defendant's wife); Seventh Circuit, *Politte v. United States,* 852 F.2d 924, 929–31 (7th Cir.1988) (same); Ninth Circuit, *Cortez v. United States,* 337 F.2d 699 (9th Cir.1964) (reduced charges against defendant's wife), *cert. denied,* 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965); Tenth Circuit, *Mosier v. Murphy,* 790 F.2d 62, 66 (10th Cir.) (charges dismissed against defendant's wife and mother-in-law), *cert. denied,* 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986); Eleventh Circuit, *Martin v. Kemp,* 760 F.2d 1244, 1248 (11th Cir.1985) (threat to prosecute defendant's wife); *see also* ALI Model Code of Pre–Arraignment Procedure § 350.3 commentary at 616–17 (1975) (noting unanimous rejection by ALI Council of recommendation to forbid plea bargains containing third-party benefits); *cf. United States v. Castello,* 724 F.2d 813 (9th Cir.) (prosecutor conditions plea agreement on guilty pleas from all defendants), *cert. denied,* 467 U.S. 1254, 104 S.Ct. 3540, 82 L.Ed.2d 844 (1984). Where the plea is entered after the prosecutor threatens prosecution of a third party, courts have afforded the defendant an opportunity to show that probable cause for the prosecution was lacking when the threat was made. *Martin v. Kemp,* 760 F.2d at 1248; *United States v. Nuckols,* 606 F.2d 566, 569–70 (5th Cir.1979).

We agree with this unanimity of view. The question in every case resolved by a guilty plea is whether the plea is voluntary. "Voluntary" for purposes of entering a lawful plea to a criminal charge has never meant the absence of benefits influencing the defendant to plead. Since a defendant's plea is not rendered involuntary because he enters it to save himself many years in prison, it is difficult to see why the law should not permit the defendant to negotiate a plea that confers a similar benefit on others. Some courts have expressed the view that the prospect of a

benefit to a third party poses a greater risk of undue pressure upon a defendant than the chance to secure a reduced sentence for himself, *see United States v. Nuckols,* 606 F.2d at 569; *United States v. Tursi,* 576 F.2d 396, 398 (1st Cir.1978), though this view has been doubted, *see Allyn v. Commissioner of Correctional Services,* 708 F.Supp. 592, 594 n. 3 (S.D.N.Y.1989).

A plea negotiation that includes a benefit to a third person can place pressure on a defendant in two respects. The defendant feels the weight of his own concern to have the benefit conferred and also endures the entreaty of the third person who is anxious to receive the benefit. Such pressures can arise in at least three contexts: (a) the defendant can offer to plead if the benefit is conferred,[2] (b) the prosecutor can inform the defendant that the benefit will be conferred if the defendant pleads, and (c) the prosecutor can inform the third party that the benefit will be conferred if the defendant pleads. The first context might seem least likely to create undue pressure for the defendant, since the third-party arrangement originates with him. The third context might seem likely to pose the greatest likelihood of pressure, since the third party's urging will weigh with the defendant in addition to the defendant's desire to help the third party. In most cases, however, the extent of the pressure arising from the prospect of conferring a benefit on a third party will probably be most significantly affected, not by the way the offer arose, but by the extent of the benefit to be conferred and the relationship of the defendant to the third party.

█ The inclusion of a third-party benefit in a plea bargain is simply one factor for a district court to weigh in making the overall determination whether the plea is voluntarily entered. *See United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987). In this case, Judge Goettel conducted a thorough Rule 11 allocution. Moreover, the facts concerning the involvement of defendant's wife in the criminal activity and the

---

2. Of the reported federal appellate decisions concerning plea agreements benefitting third parties, the proposal for the benefit originated with the defendant only in *United States v. Usher,* 703 F.2d at 958.

extent of her benefit were fully aired before the District Court when she and her husband entered their pleas at the same hearing. Both were ably represented by separate counsel. The record supports the finding that Marquez's plea was voluntary, and there is no basis for disturbing the District Court's decision denying the motion to withdraw the plea.

The judgment of the District Court is affirmed.