**UNITED STATES of America,**

v.

**Clarke LASKY, Defendant.**

**No. CR 97–127 (ADS).**

United States District Court,
E.D. New York.

Aug. 24, 1998.

from seeking dismissal on any grounds.

John F. Carman, Garden City, NY, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 23, 1998, the defendant, Clark Lasky ("Lasky" or the "defendant"), was convicted, upon his plea of guilty, of: (1) one count of knowingly, intentionally, and willfully embezzling and converting the assets and funds connected to an employee welfare benefit plan, in violation of 18 U.S.C. § 664; and (2) one count of mail fraud, in violation of 18 U.S.C. § 1341. The plea was entered into pursuant to a written plea agreement with the Government. Presently before the Court is the defendant's motion pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure ("Rule 32(d)"), seeking the withdrawal of his guilty plea. While the motion is made pursuant to Rule 32(d), the Court believes that the proper rule to be invoked is Rule 32(e) of the Federal Rules of Criminal Procedure.

### I. BACKGROUND

The defendant was the president and owner of Employee Health Plan Administrators, Inc. ("EHPA"), which maintained an office in Westbury, New York. EHPA was a health benefit consultant and administrator, and was the Collective Bargaining Representative on behalf of various employers that had entered into Associate Membership Collective Bargaining Agreements with a union, Local 119, Brotherhood of Industrial Workers ("BIW"). Under this arrangement, acting as a representative or agent of the employers, EHPA was responsible for collecting the health benefit monies from the employer and remitting those monies to BIW. The BIW Health and Welfare Plan was an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") and 29 U.S.C. §§ 1002, 1003.

By an indictment returned on February 6, 1997, the defendant was charged with: (1) knowingly, intentionally, and willfully embezzling and converting to his own use approxi-

Zachary W. Carter, U.S. Attorney, E.D.N.Y., Brooklyn, NY by Joseph R. Conway, Assistant U.S. Attorney, for U.S.

mately $750,000.00 in benefits the defendant had collected from various employers and failing to remit the amount to BIW, between the periods of February 1, 1994 through April 15, 1994, and February 1, 1995 through April 15, 1995; and (2) mail fraud premised upon the same facts as the embezzlement charges. Lasky was arraigned on February 18, 1997 and entered a plea of not guilty. The defendant was released on a $250,000 bond, secured by two homes, one owned by his wife and the other owned by his parents. At that time, the defendant was represented by a privately-retained attorney, Stephen P. Scaring, Esq. ("Scaring").

On June 6, 1997, the Court denied the defendant's motion to dismiss the embezzlement counts of the indictment and further denied the defendant's motion for a bill of particulars as to all counts of the indictment. On August 18, 1997, the defendant attempted to plead guilty. However, unsatisfied that the defendant's plea was knowing and voluntary, the Court rejected the plea.

On August 29, 1997, upon examination of the CJA 23 Financial Affidavit completed by the defendant, the Court held that the defendant qualified for a court-appointed attorney pursuant to the Criminal Justice Act. Consequently, the Court relieved Scaring as the defendant's counsel and, with the defendant's consent, appointed John F. Carman, Esq. ("Carman").

On January 9, 1998, the defendant was arrested pursuant to an arrest warrant issued by the Court on January 8, 1998. Lasky was arrested on the charge that he violated the terms of his pre-trial release by committing another crime while on bail, in violation of 18 U.S.C. § 3147. Specifically, the Government discovered that the defendant had been arrested on November 25, 1997 in Suffolk County for forgery in the second degree, in violation of § 170.10 of the New York Penal Law. Consequently, the defendant faced the possibility of revocation of his bail and the forfeiture of the collateral.

A bail revocation hearing was scheduled for January 23, 1998. On that date, rather than proceeding with the hearing, the defendant pled guilty pursuant to a written plea agreement. In the plea agreement, it was provided that in return for the defendant's

plea of guilty to two counts of the indictment, the Government would, at the time of sentencing, move for dismissal of the remaining counts, refrain from moving for any upward departure, and further refrain from taking a position where within the guidelines the Court should sentence the defendant. (Transcript of Pleading on 1/23/98 ("Tr.") at 12.) Additionally, although not expressly set forth in the written plea agreement, the Government agreed to withdraw the motion to revoke the defendant's bail and the defendant agreed to voluntarily refrain from seeking any employment, whether as an employee, proprietor, or as a consultant to any company that deals with employment pension funds or health funds within the meaning of ERISA, for a two-year period to commence on the date of his release from incarceration. (Tr. at 12–15.)

Pursuant to the requirements of Rule 11 of the Federal Rules of Criminal Procedure, the Court conducted an exhaustive allocution with the defendant before accepting his plea of guilty. During the plea allocution, the Court established that the defendant fully understood the charges against him and the rights that he would be waiving as a result of pleading guilty. The Court also established that Lasky understood the maximum penalties for the charges to which he was pleading and emphasized that, notwithstanding any promises or representations which may have been made to him, the Court alone determines the sentence to be imposed. The Court also questioned the defendant about the plea agreement that he had entered into with the Government. The defendant stated that he had reviewed the plea agreement with his attorney and that the agreement met with their approval. The Court also explained the meaning of the federal sentencing guidelines and discussed those complex rules. At the time the plea was entered, the Court was satisfied that the plea was knowing and voluntary and not the result of coercion or any promises beyond those expressly stated at the plea allocution.

The defendant was scheduled to be sentenced on June 12, 1998. Three days before the defendant was to be sentenced, the Court received a letter dated June 9, 1998 from

Carman, requesting a two-week adjournment of Lasky's sentencing in order to file the present motion. The Court granted Carman's request and set a briefing schedule for this motion.

## II. DISCUSSION

■■ Pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure, the Court may permit a defendant to withdraw his guilty plea before sentencing upon a showing of a "fair and just reason." However, a defendant does not have an absolute right to withdraw his plea. *United States v. Avellino,* 136 F.3d 249, 261 (2d Cir.1998), *reh'g denied,* 1998 WL 195636 (2d Cir. Apr.23, 1998); *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) (quoting *United States v. Williams,* 23 F.3d 629, 634 (2d Cir.), *cert. denied,* 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994)); *United States v. Burnett,* 671 F.2d 709, 712 (2d Cir.1982). Rather, "the defendant has the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir.1977). In determining whether fair and just grounds exist, a court typically considers: (1) the defendant's proffered reasons; (2) whether there has been an assertion of legal innocence; (3) the amount of time that has elapsed between the plea and the motion; and (4) whether the Government would be prejudiced by the motion. *See Torres,* 129 F.3d at 715. Furthermore,

> [t]he Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered by the district court in exercising its discretion. *United States v. Saft,* 558 F.2d 1073, 1083 (2d Cir.1977). *See also United States v. Figueroa,* 757 F.2d 466, 475 (2d Cir.), *cert. denied,* 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985). The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea. *See Figueroa,* 757 F.2d at 475 (defen-

dant's motion followed reevaluation of case against him); *Michaelson,* 552 F.2d at 476 (defendant's motion followed trial of his co-defendants and his reading of his presentence report).

*United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992).

These stringent standards for withdrawal of a guilty plea reflect society's strong interest in the finality of guilty pleas. *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir. 1989). In addition, permitting withdrawal of pleas "undermines confidence in the integrity of our [judicial] procedures ..., increas[es] the volume of judicial work, [and] delays and impairs the orderly administration of justice." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

■■ Finally, a defendant would only be entitled to an evidentiary hearing on his or her motion to withdraw a plea if the defendant presents "some significant questions concerning the voluntariness or general validity of the plea." *Gonzalez,* 970 F.2d at 1100 (citation omitted). However, "[n]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." *Id.* (citations omitted).

■■ In the present case, the defendant maintains that he should be permitted to withdraw his guilty plea because it was the result of coercion by the Government. The defendant maintains that after he was arrested for violating the conditions of bail, he was advised by the Government that it would not only move to revoke his bail, but also move to forfeit the bond collateralized by the two homes and based upon information obtained about his income, challenge his eligibility for CJA counsel. The defendant describes his state of mind prior to pleading guilty, as follows:

> Frankly, my thoughts were not about whether I was guilty or innocent of the charges in the indictment, but rather how to prevent harm from coming to the people who had supported me. In addition, I was concerned about the possibility that the

Court would relieve Mr. Carman as my attorney and compel me to retain counsel that I could not afford. In a very emotional state, I felt I had no decision to make. (Lasky Aff. dated 6/26/98 ¶ 9.) Lasky maintains that but for the Government's tactics, he would not have pled guilty. The defendant belatedly asserts his innocence, which he claims is buttressed by the decision dated April 7, 1998 of the Honorable Bernard F. McCaffrey, Nassau County Supreme Court, granting summary judgment and dismissing the complaint in the civil litigation commenced by BIW against EHPA, Nancy Lasky, and himself.

In *United States v. Marquez*, 909 F.2d 738 (2d Cir.1990), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991), the Second Circuit held that pressure on the defendant "arising from the Government's insistence that a plea bargain would not be offered to his wife unless he pled guilty" was not, under the facts of that case, a sufficient basis to withdraw the guilty plea. The Second Circuit expressed the following view with regard to the "voluntariness" of guilty pleas:

> The question in every case resolved by a guilty plea is whether the plea is voluntary. "Voluntary" for purposes of entering a lawful plea to a criminal charge has never meant the absence of benefits influencing the defendant to plead. Since a defendant's plea is not rendered involuntary because he enters it to save himself many years in prison, it is difficult to see why the law should not permit the defendant to negotiate a plea that confers a similar benefit on others.

*Id.* at 742. The Second Circuit proceeded to hold that

> [a] plea negotiation that includes a benefit to a third person can place pressure on a defendant in two respects. The defendant feels the weight of his own concern to have the benefit conferred and also endures the entreaty of the third person who is anxious to receive the benefit .... [T]he extent of pressure arising from the prospect of conferring a benefit on a third party will probably be the most significantly affected, not by the way the offer was made, but by the extent of the benefit to be conferred

and the relationship of the defendant to the third party.

> The inclusion of a third-party benefit in a plea bargain is simply one factor for a district court to weigh in making the overall determination whether the plea is voluntarily entered.

*Id.* at 742 (citation omitted). Then, in *Marquez*, turning to the facts, the Second Circuit held that the district judge conducted a thorough Rule 11 allocution and that the facts concerning the involvement of the defendant's wife in the criminal activity and the extent of her benefit were "fully aired" at the allocution and thus, affirmed the district court's denial of the defendant's motion to withdraw his guilty plea. *Id.* at 742–743.

Similarly, in the present case, the Court conducted an exhaustive plea allocution and during the same proceeding, granted the Government's motion to vacate its previous application to revoke the defendant's bail. The Court was aware that the Government's motion to vacate was predicated on the defendant's plea of guilty but still concluded that the defendant's plea was voluntary and intelligent. *See United States v. Clements*, 992 F.2d 417, 420 (2d Cir.) ("conditions imposed by the government are of sufficient importance that they should be stated to the court so that it can take them into consideration when inquiring into the voluntariness of the plea"), *cert. denied*, 510 U.S. 919, 114 S.Ct. 316, 126 L.Ed.2d 262 (1993). Although the Government's alleged intention not to challenge the defendant's entitlement to CJA counsel in return for pleading guilty was not disclosed to the Court, as will be discussed below, Lasky "fully acknowledged the voluntariness of his plea made with full knowledge of all of the circumstances." *See id.*

However, unlike *Marquez*, the benefit to be conferred to the third-parties—in this case, the defendant's wife and parents—was not in the unfettered discretion of the Government. The Court would render the decision on any motion to revoke bail and to forfeit any collateral. Further, the defendant does not contend that he received any pressure from his wife and parents, thus relieving the Court of any concern of pressure on the defendant by a third-party.

In addition, Lasky's claim of coercion is contradicted by the record. As the following colloquy conducted by the Court demonstrates, when twice asked the identical question of whether anyone had forced him or threatened him to plead guilty, the defendant's response was in the negative:

> THE COURT: And are you making this plea of guilty voluntarily and of your own free will and accord?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Has anyone threatened or forced you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.

(Tr. at 25, 27.) The record further reveals that the defendant had ample time to consider his plea:

> THE COURT: Mr. Carman, has your client had sufficient time to consider this matter?
>
> MR. CARMAN: Yes, Your honor.
>
> THE COURT: Has your client had enough time to review the plea agreement?
>
> MR. CARMAN: He has.
>
> THE COURT: Have you been able to go over it with him?
>
> MR. CARMAN: I have.

(Tr. at 4.) Lasky was given every opportunity by the Court to raise any concerns, questions, or anxieties about the plea. While he demonstrated his ability to do so by questioning the portion of the plea regarding the temporary limitation on his future employment, (*see* Tr. at 13–15), the defendant did not express any feeling of pressure concerning any portion of the plea. Other than this "employment portion" of the plea, Lasky expressed absolutely no doubts, hesitation, or lack of understanding as to what he was doing or of the consequences of his guilty plea. The Court finds that his present assertions to the contrary are insufficient to support his motion to withdraw. *See Torres,* 129 F.3d at 715 (defendant "was given every chance by the district court to raise any concerns, questions or anxieties about the plea" and thus, considering that defendant's "unequivocal admissions under oath contradict[ed] his unsupported assertions of pressure" by his attorney, district court did not abuse its discretion in denying his motion to withdraw his plea without a hearing); *United States v. Rodriguez,* 968 F.2d 130, 141 (2d Cir.) (rejecting defendant's argument that he was pleading guilty in exchange for the dismissal of the indictment against a co-defendant, which contradicted plea allocution), *cert. denied,* 506 U.S. 847, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992); *United States v. Morales,* 1 F.Supp.2d 389, 392 (S.D.N.Y.1998) (rejecting defendant's argument that his attorney coerced him into pleading guilty which contradicted sworn allocution); *Jimenez v. United States,* No. 96–CIV. 8679, 1998 WL 184339, at *5 (S.D.N.Y. Apr.2, 1998) (rejecting the defendant's argument that the Government coerced him into pleading guilty by "threaten[ing] to make a serious effort to get [his] common law wife [Ines Urena] a longer sentence than she deserved" and through the use of psychological coercion, which contradicted plea allocution); *United States v. Rivera,* No. 93 CR. 568, 1995 WL 564163, at *5 (S.D.N.Y. Sept.22, 1995) (rejecting the defendant's claim that he pled guilty under pressure from his ex-wife, which contradicted plea allocution).

"All pleas of guilty are the result of some pressures or influences on the mind of the defendant." *United States v. Buckles,* 843 F.2d 469, 472 (11th Cir.1988) (rejecting claim that defendant was coerced into pleading guilty by his attorney) (quoting *Schnautz v. Beto,* 416 F.2d 214, 215 (5th Cir.1969)), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989). Lasky alleges that the Government advised him that pleading guilty was the best deal he could obtain, and that his choices were to either plead guilty or risk the consequences of the variety of options which the Government could rightfully pursue. So what? In the Court's view, this offer was not unreasonable under the circumstances. The Court finds that the plea represented a voluntary and intelligent choice among the alternative courses of action open to the defendant.

Furthermore, the Court finds the timing of the motion to be significant and telling as to the defendant's motive. Lasky expressed his intention to file the present motion three days before he was scheduled to be sentenced and after he received a favorable decision from Justice McCaffrey on the civil state court action commenced by BIW against him. However, the defendant has provided no evi-

dence that Justice McCaffrey's decision would affect the plea or that the civil claim involves the very same issues as this criminal case. The inference is clear; the defendant seems to have re-evaluated the possibility of obtaining an acquittal if he proceeds to trial, in sole reliance on Justice McCaffrey's favorable decision, and now regrets having pled guilty. In addition, this eleventh-hour motion prior to sentencing suggests that the defendant is becoming apprehensive over the prospect of being incarcerated. The plea agreement stated that the estimated guideline range by the attorneys was 18–24 months. (*See* Tr. at 12.) The guideline calculations contained in the Presentence Investigation Report deviates from the parties' estimated range and cite a higher range of 30–37 months. However, at the plea allocution, the Court dispelled any beliefs that the defendant may have held as to withdrawing his guilty plea in the event of an erroneous estimation of the term of incarceration:

THE COURT: And probably the most important part of this whole deal is what the sentencing guidelines are going to end up as, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In fact, in your plea agreement, there's a statement that says on page—well, it's not numbered, but its page 2, "this level carries a range of imprisonment of 18 to 24 months, assuming that the defendant has no prior convictions."

You saw that, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That was an important part of this agreement, right?

THE DEFENDANT: Yes, it is.

THE COURT: As a matter of fact, you initialed some changes that were made at some point, did you not?

THE DEFENDANT: Yes.

THE COURT: Forget it. Doesn't mean a thing. I don't know whether it will be 18 to 24 months. Whatever the good book shows, the Sentencing Guidelines, and whatever your life has been, that's what the point level will be.

Do you follow me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So in the month and-a-half or two months when your lawyer and you get the presentence report and the recommendation and it is not 18 to 24 months, but let's assume the worst scenario, 50 to 60 months, you will be one disappointed man, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I will not let you withdraw this plea of guilty on that ground.

Do you follow me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you have to make a decision whether you want to go with this based on a reasonable estimate that your lawyer has given you and the prosecutor with no assurance that it will be that or take your chances and go to trial.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: But if it is more than what you think it will be you cannot withdraw your plea.

Is that clear?

THE DEFENDANT: Yes, I understand.

THE COURT: What do you want to do?

THE DEFENDANT: I want to plead.

(Tr. at 20–22.) The Court finds that the motion to withdraw simply represents a change of heart and therefore, must be denied. *See Gonzalez,* 970 F.2d at 1100.

Moreover, Lasky's prior acknowledgment of guilt rebuts his present claim that he would not have pled guilty but for the threatening conduct of the Government. In reaching its decision, the Court relies on the following detailed allocution which provided a factual basis for the plea:

THE COURT: Would you describe briefly in your own words what you did in connection with the crime charged in Count 2 of the indictment?

THE DEFENDANT: On approximately February 1st of 1995, I as the president of Employee Health Plans received funds into my organization of which were within my control and I had failed to forward the monies that were also part of those monies to a trust fund, and I used it for the

purposes of which would have been to my own benefit.

THE COURT: So the count says that you knowingly, intentionally and unlawfully embezzled funds of the plan assets and funds connected to it to an employee health benefit plan to your own use; is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You knew at the time that it was improper and illegal for you to do that?

THE DEFENDANT: Yes.

THE COURT: You knew you were a fiduciary at the time?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And this was in the amount of approximately $250,000?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you converted those funds to your own needs?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Where were you at the time? Where was your office?

THE DEFENDANT: At 900 Ellison Avenue, which is now called Merchants Concourse.

THE COURT: That's in Mineola?

THE DEFENDANT: It's in Westbury.

\*    \*    \*    \*    \*    \*

THE COURT: Now, are you ready to plead to Count 10 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

\*    \*    \*    \*    \*    \*

THE COURT: Will you describe briefly in your own words in connection with what you did with Count 10 in the indictment.

THE DEFENDANT: I allowed my office to mail a bill to Metropolitan Food Company of Massapequa and said bill was paid and received into my office and knowingly did not forward the portion of contribution to the ERISA fund.

THE COURT: So you took that contribution for your own use?

THE DEFENDANT: Correct.

THE COURT: And that was received by mail?

THE DEFENDANT: Correct.

THE COURT: Into your office in Westbury?

THE DEFENDANT: Correct.

THE COURT: About when did that take place, Mr. Lasky?

THE DEFENDANT: On or about February 10th of 1995.

(Tr. at 25–28.) *See United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (statements at plea allocutions "carry a strong presumption of verity,"); *see also Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Having addressed Lasky personally in conducting the plea inquiries and having had the opportunity to observe his demeanor and assess his credibility, the Court is entitled to reject the belated claim of innocence that contradicted his credible plea of guilty. *See Maher,* 108 F.3d at 1531.

■ Finally, although there was no specific request by the defendant for a hearing as to the voluntariness of his plea, the Court finds that no evidentiary hearing need be held, as the defendant's assertions in this motion are plainly contradicted by his own abundant clear admissions in the record. Lasky has not made the threshold showing that such a hearing is necessary. *See Gonzalez,* 970 F.2d at 1100 (denial of evidentiary hearing proper where allegations "merely contradict the record, are inherently incredible, or are simply conclusory").

In sum, under the totality of the circumstances, the Court finds that there is no "fair and just reason" to permit Lasky to withdraw his guilty plea.

### III. CONCLUSION

Having reviewed the submissions of the parties and heard oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the defendant's motion pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure, to withdraw his plea of guilty is **DENIED;** and it is further

**ORDERED,** that the sentencing of the defendant is scheduled for Friday, Septem-

ber 4, 1998, at 3 P.M. and will proceed on that date, without further extension.

**SO ORDERED.**