**UNITED STATES of America,**

v.

**Johnny TAVAREZ, Defendant.**

**No. 96 CR 895.**

United States District Court,
S.D. New York.

March 28, 2001.

Michael A. Rogoff, U.S. Attorney's Office, Mary jo White, U.S. Atty., New York City, for plaintiff.

Charles Lavine, Grossman, Lavine & Rinaldo, Forest Hills, NY, David Touger, Peluso & Touger, New York City, Jeffrey Mark Cohen, New York City, Ivan S. Fisher, New York City, Oliver S. Storch, New York City, Joann DiMarco, Law Office of Joann DiMarco, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Defendant Johnny Tavarez ("Tavarez") moves to (1) reconvene the hearing on his motion to withdraw his guilty plea; (2) have a new Pre–Sentencing Report prepared; (3) recalculate his Sentencing Guidelines; and (4) asserts an ineffective assistance of counsel claim. For the reasons set forth below, Tavarez's motion is denied.

## BACKGROUND

On September 26, 1996, a federal grand jury sitting in the Southern District of New York returned a one-count indictment

charging Tavarez with conspiracy to distribute and to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846.

Since the time of his indictment Tavarez has been represented by a series of attorneys. After being initially represented by David Touger, Esq., Tavarez retained Oliver Storch, Esq. ("Storch") in or about January 1997. In or about July 1997, Tavarez fired Storch and hired Jeffrey Cohen, Esq. ("Cohen"). On January 14, 1999, Tavarez fired Cohen and retained Ivan Fisher, Esq. ("Fisher"). On February 16, Tavarez fired Fisher and retained Gail Laser, Esq. Finally, in April 2000, again unhappy with his attorney, Tavarez requested and was granted permission to retain his most recent counsel, Ramon Pagan, Esq. ("Pagan").

In or about June 1998, the Court learned that Cohen—- who was then representing Tavarez—- believed that he was the target of a criminal investigation by the Government. The Court promptly held what is commonly known as a *"Curcio"* hearing to fully inform Tavarez of Cohen's potential conflict of interest. *See United States v. Curcio,* 680 F.2d 881 (2d Cir.1982). On June 17, 1998, after being advised of the potential conflict, Tavarez indicated that he wished to retain private counsel to discuss the issue further. *See* Transcript of Hearing, held on June 17, 1998 at 10–11. On June 24, 1998, Tavarez informed the Court that he consulted with Ben Brafman, Esq. and Gerry Shargel, Esq. Both attorneys, however, declined to represent Tavarez. *See* Transcript of Hearing, held on June 24, 1998 at 3–4. The Court then appointed Charles Lavine, Esq ("Lavine"), pursuant to the Criminal Justice Act, to advise Tavarez about Cohen's potential conflict of interest. *See id.* at 5–6.

On July 1, 1998, with both Cohen and Lavine present, the Court continued its inquiries of Tavarez regarding Cohen's potential conflict of interest. *See* Transcript of Hearing held on July 1, 1998 ("7/1/98 Tr."). Tavarez acknowledged that he had consulted with Lavine about the dangers of a potential conflict of interest. *See id.* Lavine confirmed the consultation, indicating that he discussed with Tavarez "the potential danger to him of what could happen if his attorney believes that he is being investigated and the attorney then would, for whatever reason, decide not to represent his client as zealously as the client deserves. . . ." *Id.* at 10. Tavarez also articulated in his own words what he believed Cohen's potential conflict of interest to be: "[I]f Mr. Cohen should believe that he is under investigation, he might be tempted to behave in a way towards the government that would not be in your benefit [sic] interest, that this is a possibility." *Id.* at 6. Tavarez stated that he understood Cohen's potential conflict of interest and needed no further explanation from the Court or Lavine. *See* 7/1/98 Tr. at 8. Nonetheless, Tavarez requested, and the Court granted, an additional week to consult with other counsel on the issue. *See id.* at 11. The Court explained to Tavarez that at the next conference, he would have to decide whether he was going to proceed with Cohen or retain new counsel.

On July 8, 1998, the Court again inquired whether Tavarez had considered the conflict of interest issue fully and asked for his decision. *See* Transcript of *Curcio* Hearing held on July 8, 1998 at 2. Tavarez indicated that, after having considered how Cohen's representation of him might be compromised by the potential conflict of interest, he wished to proceed with Cohen as his attorney and waived his right to conflict-free counsel. *See id.*

On July 8, 1998, Tavarez pleaded guilty to the charge against him. *See id.* Before accepting Tavarez's guilty plea, the Court, pursuant to Federal Rule of Criminal Procedure 11, conducted an inquiry of Tavarez in order to ensure that the guilty plea was made knowingly and voluntarily. The Court specifically asked Cohen whether he had advised Tavarez about the Sentencing Guidelines. *See* Order dated July 19, 2000 at 13. Cohen stated that he explained to Tavarez how a sentencing range would be arrived at after taking into consideration certain facts of Tavarez's case. *See id.* When the Court asked Tavarez whether Cohen had imparted this information, he responded, "yes." *See id.* at 14.

The Court also read the indictment to Tavarez who indicated that he understood it, and informed Tavarez that he could receive a sentence of up to life imprisonment if he plead guilty. *See id.* The Court then asked Tavarez whether anyone had promised or predicted what his sentence would be and whether he was coerced or threatened to enter a plea of guilty. *See id.* After Tavarez stated that nobody had done so the court explained to Tavarez, that in any event, no such promise or prediction would bind the Court and that he may receive the maximum of life imprisonment. Tavarez again indicated that he understood. *See id.*

On May 23, 2000, almost two years after his guilty plea, Tavarez filed a motion, pursuant to Federal Rule of Criminal Procedure 32(e), to withdraw his guilty plea. Tavarez's grounds for withdrawal were (1) that Cohen failed to advise him on how the Guidelines would impact his sentence, *see* Affidavit of Johnny Tavarez, dated May 23, 2000 ("Tavarez Aff."), and (2) that the Court did not sufficiently investigate Cohen's potential conflict of interest. *See id.* ¶¶ 7, 20.

On June 21, 2000, the Court held a hearing in connection with Tavarez's mo-

tion to withdraw his guilty plea. At the hearing, Lavine testified that he discussed at length the potential conflict of interest issue with Tavarez. *See* Transcript of Hearing, held on June 21, 2000 at 15–18. Lavine testified that he informed Tavarez that if Cohen believed he was being investigated by the Government, he would have an incentive to cooperate, which may distract him from Tavarez's representation or even put their interests at odds. *See id.* at 16–17. Lavine also explained to Tavarez that he had a constitutional right to an attorney with no potential or actual conflict of interest and that he should contemplate retaining such an attorney. *See id.* at 17. Finally, Lavine testified that he "had no doubt whatsoever" about Tavarez's ability to understand the potential conflict of interest. *Id.* at 22.

As to whether Tavarez was informed as to how the guidelines would effect his sentence, Lavine also recalled informing Tavarez about sentencing enhancements for firearm possession, his role in the offense, perjury, and a loss of a downward adjustment for acceptance of responsibility. *Id.* at 11–12, 23. Similarly, Lavine testified that he informed Tavarez of the maximum and minimum penalties associated with the crime with which he was charged. *See id.* at 22. Storch also testified during the hearing that he informed Tavarez that he could receive sentencing enhancements for perjury, *see id.* at 121, 123–124, and possession of a firearm, *see id.* at 119, and that the charge against Tavarez carried a minimum penalty of ten years imprisonment and a maximum penalty of life imprisonment. *See id.* at 116.

On July 19, 2000, this Court held that Tavarez's claims were "utterly unpersuasive and belied by the record in this case." *See* Order dated July 19, 2000 at 11. First, the Court found that Tavarez fully understood Cohen's potential conflict of in-

terest and that his waiver of his right to conflict-free counsel was knowing and voluntary. *See id.* at 12. Second, the Court found that Tavarez's guilty plea was entered knowingly and voluntarily. *See id.* at 15. The Court based the finding upon, *inter alia,* Tavarez's plea allocution, his contradictory affidavit which declared both that Cohen did not inform him what his base offense level would be and that Cohen advised him that his adjusted base offense level would be 21, *see* Tavarex Aff. at ¶¶ 9, 13, Lavine and Storch's "very credible testimony" that they informed Tavarez that his base level offense could be adjusted upward, and upon the Court's clear instruction that he could face life imprisonment. *See* Order dated July 19, 2000 at 15–16.

The Court also found that none of the considerations mentioned in Federal Rule of Criminal Procedure 32 weighed in favor of allowing Tavarez to withdraw his plea. The Court noted that Tavarez did not assert that he is actually innocent of the crime to which he pled guilty; that he waited almost two years to move to withdraw his guilty plea; that he offered no explanation for the extended delay; and that the Government would undoubtedly suffer substantial prejudice should Tavarez be permitted to withdraw his guilty plea because the Government's two cooperating witnesses had since been deported to the Dominican Republic. The Court therefore found no fair or just reason to permit Tavarez to withdraw his guilty plea. *See id.* at 16–17.

### DISCUSSION

### I. Motion to Reopen Plea Withdraw Hearing

■ Tavarez now moves to reopen the hearing on his motion to withdraw his plea so that his former attorney Cohen— who was recently acquitted of criminal charges— may testify.[1] *See* Letter from Pagan to the Honorable Shirley Wohl Kram ("Kram") of 10/26/00. In support of his motion to reopen the hearing Tavarez asserts that "Cohen sold [him] a bill of goods," *see* Letter from Pagan to Kram of 2/12/01, and that "Mr. Cohen [sic] only interest was to sell third party cooperation and therefore did not act as an attorney and further the entry of the plea placed the defendant in untenable position of facing life terms which prejudiced any rights of the defendant herein." *Id.* Taverez also argues that this Court "could have appointed counsel to insure that Mr. Tavarez [sic] rights were being protected," and that "[t]he court failed to examine critically even the slight procedural deficiencies to ensure that the defendants [sic] guilty plea was a voluntary and intelligent choice." *Id.* In sum, Tavarez alleges that "Cohen's testimony will reveal that the defendant did not fully understand the ramification of his plea and thus the plea is invalid." Letter from Pagan to Kram of 11/17/00.

■ Rule 32(e) of the Federal Rules of Criminal Procedure provides, in relevant part, that a Court may permit a defendant to withdraw a guilty plea before sentence is imposed "if the defendant shows any fair and just reason." Fed. R. Cr. P. 32(e). It is well settled, however, that "[a] defendant has no absolute right to withdraw his plea of guilty." *United States v. Williams,* 23 F.3d 629, 634 (2d Cir.1994). To the contrary, "a defendant has the burden of persuading the trial court that valid grounds for withdraw exist." *United States v. Marquez,* 909 F.2d 738, 740 (2d Cir.1990).

1. Tavarez alleges that Cohen, who was allegedly facing criminal prosecution at the time of the June 21, 2000 hearing, asserted his 5th Amendment rights and was therefore unavailable to testify. *See* Letter from Pagan to Kram of 10/26/00.

■ Moreover, "[a] defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992). "Although the standard to be applied in granting a hearing is less rigorous than the standard for granting the motion to withdraw the plea ... the defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing." *Id.* There is no need for a hearing when "allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible or are simply conclusory." *Id.*

In this case it is clear that Tavarez's grounds for reopening his hearing clearly contradict the record and are inherently incredible. First, Tavarez's claim that the court failed to "appoint counsel to insure that [his] rights were being protected" and that "[t]he court failed to examine critically even the slight procedural deficiencies" is clearly contradicted by the record. As outlined above, the Court both appointed counsel to discuss the conflict of interest with Tavarez and held a *Curcio* hearing to ensure that Tavarez was advised of his rights to conflict-free counsel.

Second, this Court has already found that in light of Tavarez's plea allocution, his contradictory affidavit, the testimony of two of his previous lawyers and the Court's clear statement that he could receive a sentence of up to life imprisonment, that Tavarez entered his plea knowingly and voluntarily. Simply put, the record of this case belies Tavarez's bald assertion that Cohen's testimony will establish that he "did not fully understand the ramification of his plea." Letter from Pagan to Kram of 11/17/00. Therefore, the Court finds that it is wholly unnecessary to reconvene the hearing, for a third time, to examine whether Tavarez has entered a knowing and voluntary plea. Having carefully considered the claims made by Tavarez, the Court finds that Tavarez has failed to raise any significant concerns regarding the voluntariness or general validity of the plea which justifies an evidentiary hearing on any of these issues. Accordingly, Tavarez's motion to reopen the hearing denied.

## II. Request for a new Pre–Sentence Report

■ Tavarez also moves for the preparation of a new Presentence Report ("PSR"). The initial PSR was prepared on September 24, 1998 and updated on November 24, 1998 and on October 11, 2000. Tavarez claims that "[i]n order to properly address counsel's objections to the [PSR]-Report the issues raised by counsel's objection need to be revisited by way of additional investigation conducted by the probation officer." Letter from Pagan to Kram of 10/26/00. Specifically, Tavarez alleges that he was unable to give a statement to the Probation Officer because his attorney was not present. *See id.* at 2. He claims that this has adversely affected him because he was not given the three points reduction for acceptance of responsibility he claims he deserved as "[i]t is obvious from the plea of guilty and [his] subsequent actions of cooperating with the government that he has accepted responsibility for his actions." *Id.*

The Court, however, has already determined that a reduction for acceptance of responsibility is not warranted. *See* Order dated July 19, 2000. The Court found that although entering a plea of guilty before the start of trial constitutes "significant evidence of acceptance of responsibility," that evidence was outweighed by the fact that Tavarez had obstructed justice by committing perjury several times. The Court held that this was not an "extraordi-

nary case" that would justify simultaneous upward and downward adjustments for obstruction of justice and acceptance of responsibility, respectively.[2] Because Tavarez has set forth no reason for a new PSR other than to determine whether he is entitled to a downward adjustment for acceptance of responsibility— which the Court has already found he is not— the motion for a revised PSR is denied.

### III. Recalculation of Sentencing Guidelines under *Apprendi*

▇ Taverez argues that his Sentencing Guidelines range should be recalculated in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See* Letter from Pagan to Kram of 2/5/01. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63.

The Government has agreed that *Apprendi* applies to the instant case and, "absent a jury trial, the defendant's sentence must be capped at 240 months imprisonment, *i.e.*, the statutory maximum sentence prescribed under Title 21, United States Code, Section 841(b)(1)(C)." Letter from Cheryl Krause, A.U.S.A. to Kram of 1/11/01. The Government, however, argues that *Apprendi* does not require further remedy and that the Sentencing Guidelines need not be recalculated. *See id.*

The Court does not intend to sentence Tavarez to more than the statutory maximum. Therefore, *Apprendi* is inapposite to the instant case. *See e.g., United States v. Moreno*, No. 94 Cr. 0165, 2000 WL 1843232, at *3 (S.D.N.Y. December 14,

2000); *see also United States v. Aguayo–Delgado*, 220 F.3d 926, 933 (8th Cir.2000); *United States v. Westmoreland*, 240 F.3d 618 (7th Cir.2001); *United States v. Meshack*, 225 F.3d 556, 576 (5th Cir.2000); *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir.2000). Accordingly, the motion to recalculate Tavarez's Sentencing Guidelines is denied.

### IV. Ineffective Assistance of Counsel

▇ Tavarez also asserts an ineffective assistance of counsel claim based on Fisher's dual representation of Tavarez and Cohen, Tavarez claims that "[a] defendant's right to counsel is violated if a lawyer represents multiple defendants and the interest of one defendant conflicts with the interest of the other." *See* Letter from Pagan to Kram of 2/5/01. Specifically, Tavarez alleges that although "Fisher's conflict arose after the defendant had pleaded, it also cast a further taint over representation provided to [him]." Letter from Pagan to Kram of 7/14/00 at 6. To demonstrate that his attorney provided constitutionally ineffective assistance of counsel, Tavarez must show that Fisher, who represented him for a total of thirty-two days and was not his attorney during the time he entered his plea or during sentencing, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment" and that the "errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Upon review of the record, the Court finds that Tavarez has failed to sustain this burden. Tavarez does not set forth any evidence or cite any examples of how Fisher's representation

---

**2.** Application Note 4 to § 3E1.1 states that it takes an "extraordinary case" to justify the

simultaneous application of the obstruction increase and the acceptance decrease.

"fell below an objective standard of reasonableness" or how Fisher's performance adversely affected him. Therefore, Tavarez's claim of ineffective assistance of counsel is denied.

## CONCLUSION

For the reasons set forth above Tavarez's motion to reopen his hearing to withdraw his plea, have a new PSR, recalculate his Sentencing Guidelines and his ineffective assistance of counsel claim are hereby denied. Accordingly, sentencing will take place on April 4, 2001 at 2 P.M. No further adjournments will be granted.

SO ORDERED.